Richard E. McDANIEL, Appellant,

v.

Charles V. SAGE, M.D. and Margaret Watters, Appellees.

No. 2–779A204.

Court of Appeals of Indiana, Fourth District.

May 11, 1981.

Rehearing Denied July 1, 1981.

Michael J. Tosick, Ging, Free, Brand, Tosick & Van Winkle, Greenfield, Steven H. Frank, Magnuson, Dein & Hammes, Indianapolis, for appellant Richard E. McDaniel.

Jon D. Krahulik, John P. Price, Bingham, Summers, Welsh & Spilman, Indianapolis, for appellee Charles V. Sage, M.D.

William Levy, Eskenazi, Mitchell, Yosha & Hurst, Indianapolis, for appellee Margaret Watters.

MILLER, Judge.

In March, 1975 appellant Richard McDaniel filed his amended complaint against the appellees Margaret Watters, R.N., and Charles V. Sage, M.D., alleging Watters negligently administered an injection prescribed by Sage who McDaniel claimed was also liable on an agency theory. At the close of McDaniel's evidence on the first day of trial, the court granted Sage's Motion for Judgment on the Evidence (Directed Verdict) pursuant to Ind. Rules of Procedure, Trial Rule 50(A), based on a finding that there was no evidence that Watters acted as Sage's agent when she administered the injection. The following day at the close of all the evidence the trial court granted Watters' T.R. 50 motion, finding our Workmen's Compensation Act barred the action against Watters since McDaniel and she were both employed by the Wabash Insurance Company (the Company).[1] McDaniel appeals both judgments insisting Watters acted as Sage's agent in administering the shot and that his complaint against Watters was not precluded by our Workmen's Compensation Act.

For the reasons stated below we affirm in part and reverse in part.

## FACTS

Sage, a licensed physician working part time at the Company's infirmary, and Watters, a licensed registered nurse who supervised the infirmary, treated employees who were injured or became ill while at work.

On March 7, 1973 McDaniel, an employee of the Company, became ill and went to the infirmary for treatment by Sage and Watters. After an examination by Dr. Sage, he prescribed an injection of medication and directed Watters to make the injection. As admitted by McDaniel, Sage did not instruct Watters as to the location of the injection or otherwise supervise her actions. Evidence at trial indicated that had the injection been given near the elbow, as McDaniel contended, such procedure would have been improper resulting in the injury he sustained. However, Watters testified she administered the shot in the deltoid muscle of the left arm, the area established by the evidence as the correct location for the injection. McDaniel presented uncontradicted evidence that immediately after receiving the shot he experienced unusual physical reactions and sustained damage to his left ulnar nerve.

## DISCUSSION AND DECISION

Our scope of review for a T.R. 50 judgment on the evidence dictates an examination to determine if there is evidence of probative value to support each essential element of a cause of action. If such evidence exists, we must reverse. *Huff v. Travelers Indemnity Co., Inc.,* (1977) 266 Ind. 414, 363 N.E.2d 985. With this standard in mind we now address the issues presented.

*Issue One: Was there evidence that Watters acted as Sage's agent when she administered the shot to McDaniel?*

An agency relationship can exist only if the agent is subject to the principal's control with respect to work details. *Lewis v. Davis,* (1980) Ind.App., 410 N.E.2d 1363; *Indiana Dept. of Rev., Gross Inc. Tax Div.*

1. The court made the following oral finding and order:

    "There being a finding that in this case that medical malpractice does not apply, then the Court is finding that the most that the jury could possibly find against the Defendant [Watters] in this case might be negligence; and that if that is the case—based on the Court of Appeals decision—that [*sic*] that negligence would be part of, uh, a workmen's compensation claim in the course of employment. That being the case, the Motion for A Directed Verdict on behalf of the Defendant Watters as against the Plaintiff at the close of all of the evidence is granted and judgment is hereby granted on behalf of the Defendant [Watters]."

*v. Waterfiled [sic] Mtg. Co., Inc.*, (1980) Ind.App., 400 N.E.2d 212. Uncontradicted evidence submitted at trial relevant to this control question revealed that Sage and Watters were each individually employed by the Company, that Sage's sole direction to Watters was to administer a hypodermic injection to McDaniel and that Watters administered the shot outside the presence of Sage and independent of his direction or supervision.

■ Here Watters was employed by the Company and not by Sage. The evidence is uncontradicted that she was not subject to Sage's control when she administered the shot. The factual situation is similar to that in *Lewis v. Davis, supra*, where the issue of a doctor's vicarious liability for a non-employee nurse's negligence in administering an injection was discussed as follows:

> "In giving the medication ordered by Dr. Davis, Mrs. Jefferson was acting as a hospital employee in the performance of a service for one of the doctors associated with the hospital. She testified that it was general practice for the doctors connected with the hospital to send their patients there to receive medication. She explained that she had been asked to give medication, upon a doctor's order, at least once or twice a week.
>
> Clearly, Nurse Jefferson was a hospital employee. She was acting as such when she administered the shot and made her observation of Mrs. Lewis. There was no evidence that she was 'subject to the control' of Dr. Davis 'with respect to the details of the work.' *Western Adjust. & Insp. Co., supra* [236 Ind. 639, 142 N.E.2d 630] at 634. *See also Davis v. Schneider* (1979), Ind.App., 395 N.E.2d 283."

*Lewis v. Davis, supra*, 410 N.E.2d at 1366–67. Since Sage did not employ Watters nor control her complained of action, he was not

vicariously liable and we conclude the trial court correctly granted his T.R. 50 motion for judgment on the evidence.

*Issue Two: Was McDaniel's action against Watters precluded by the "fellow employee" rule of the Workmen's Compensation Act?*

■ Ind. Code 22–3–2–13 abrogates a lawsuit by one employee against a second employee for an injury sustained in the course of employment.[2] McDaniel argues that Watters is not protected by the "fellow employee" rule even though he acknowledges she was employed by the Company as a nurse. In support of his argument McDaniel cites *Ross v. Schubert*, (1979) Ind. App., 388 N.E.2d 623 which held that the "fellow employee" immunity provision of IC 22–3–2–13 did not protect company physicians from a claim of medical malpractice brought by an employee of the same company. McDaniel argues that nurses acting in the course of their professional responsibilities similarly are outside the ambit of IC 22–3–2–13. Watters rejects this attempted expansion of *Ross* claiming that such an expansion "is without basis in law or logic."

In *Ross*, Wilburn R. Ross, a factory worker received at the company clinic a medical examination from three doctors, who "met all the requirements for being salaried employees of International [Harvestor]." *Id.* at 625. Initially, the doctors assigned Ross to light duty work, but later one of the doctors examined and cleared him for regular factory work subject to some weight lifting limitations. However, three days after starting his new job, he was unable to continue and an examination revealed Ross was permanently disabled. At the trial of Ross's malpractice action against the three clinic doctors, the court instructed the jury that if it found the doctors were company employees, they were immune from a claim

---

2. The pertinent portion of IC 22–3–2–13 reads: "Whenever an injury or death for which compensation is payable under this act [22–3–2–1—22–3–6–3], shall have been sustained under circumstances creating in some other person than the employer and not in the same employ a legal liability to pay damages in respect thereto, the injured employee, or his dependents in case of death, may commence legal proceedings against such other person to recover damages notwithstanding such employer's or such employer's compensation insurance carrier's payment of or liability to pay compensation under this act.

of damages based on malpractice due to the "fellow employee" rule of IC 22–3–2–13. The jury returned a verdict adverse to Ross and he appealed claiming the previously summarized instruction was erroneous.

During the course of our opinion, in which we reversed the trial court and held that company doctors were not so protected, we examined generally the history of the Indiana Workmen's Compensation Act as well as IC 22–3–2–13 specifically. We concluded that the Act lacked

> "any legislative design to immunize physicians from medical malpractice claims or to interfere with the customary physician-patient relationship. It is our opinion that it would torture the Indiana legislature's intent, as evidenced by its objectives in enacting the Act, to let the simple rubric of 'in the same employ' insulate physicians from liability arising out of the performance of professional medical services."

*Ross v. Schubert, supra,* at 626. Our conclusion was premised upon the legislature's intent not "to abridge the remedies an employee has in tort against a *third party*" because "it has been the employment relationship which [delineates the Act's] perimeters of immunity." (Emphasis in original.) *Id.* at 627. This premise dictated an examination of the doctor's employment relationship with the company and we observed the doctors were exercising their professional skills and judgment in treating Ross. Therefore, they

> "were not under the corporation's control when they exercised their professional skills. Their professional status and concomitant freedom to exercise discretion in their medical treatment prevented the corporation from controlling their actions .... Because of the peculiar nature of the profession, 'a licensed physician may not accept directions and instructions in diagnosing and treating ailments from a corporation or an individual who is not a licensed practitioner.' *Iterman et al. v. Baker,* [(1938) 214 Ind. 308,] 15 N.E.2d [365] at 370. International Harvester,

therefore, could not control the manner which these physicians rendered treatment to Ross, and consequently, they remained independent contractors."

*Ross v. Schubert, supra,* at 629. Because "the right to control not only the end result of another's labors, but also the manner in which the work is performed, is the dispositive criterion in determining whether an individual is an independent contractor or an employee"[3] and since the physicians' liability "arose from their independent exercise of medical judgment, that is, it arose from their doctor-patient relationship with Ross and not from the employer-employee relationship which the Act was designed to regulate," we held IC 22–3–2–13 did not preclude company physicians from medical malpractice claims brought by a co-employee. *Ross v. Schubert, supra,* at 629.

The rationale of *Ross* logically controls here. In *Ross* we cited with approval the following language from *Duprey v. Shane,* (1952) 39 Cal.2d 781, 791, 249 P.2d 8, 14, which was quoted in *Duprey* from *Smith v. Golden State Hosp.,* (1931) 111 Cal.App. 667, 672, 296 P. 127, 129:

> "'That *independent professions* by the fact of business contact with the employer should be absolved of responsibility for mistake, avoidable or unjustified neglect resulting in secondary affliction, seems obnoxious to the purpose and spirit of such a statute. To so hold might induce industry to encourage quackery, and place a premium upon negligence, inefficiency and wanton disregard of the professional obligations of medical departments of industry, toward the artisan.'"

(Emphasis added.)

*Ross v. Schubert, supra* at 629. There is no question that as a licensed registered nurse Watters was engaged in an "independent profession." While Watters met all the requirements for being a salaried employee of the Company, as did the company physicians in *Ross,* yet the Company did not control Watters' placement of the injection; rather, she relied on her training, experi-

---

**3.** The Court cited B. Small, Workmen's Compensation Law of Indiana § 4.2 at 66 (1950); Note, *The Malpractice Liability of Company Physicians,* 53 Ind.L.J. 585, 588 (1978).

ence and skill as a professional, licensed registered nurse to determine such placement. Obviously, while Watters could take instructions and directions from a licensed medical practitioner, no such control existed here and she must have rejected any instruction from the Company as to the manner and location of administering the shot.[4] Furthermore, Watters's liability arose from her nurse-patient relationship with McDaniel "and not from the employer-employee relationship which [IC 22–32–13] was designed to regulate." *Ross v. Schubert, supra* at 629. Consequently, we conclude Watters acted as an independent contractor and find McDaniel's action against her is not precluded by the statute. Since the evidence as to Watters's alleged negligence is conflicting, the trial court erred in granting her T.R. 50 motion.[5]

The trial court's directed verdict in Sage's favor is affirmed; its judgment, however, with respect to the grant of Watters's T.R. 50 motion is reversed and remanded for a new trial on McDaniel's complaint against Watters.

Affirmed in part, reversed in part and remanded.

YOUNG, P. J. and CHIPMAN, J., concur.

---

**4.** As a registered nurse, Watters's profession encompassed performing

"those activities which include but are not limited to: (1) identifying human responses to actual or potential health conditions; (2) deriving a nursing diagnosis which identifies the needs of the individual and/or family; (3) executing a nursing treatment regimen through the selection, performance and management of nursing interventions *based on* the nursing diagnosis; (4) teaching health care practices; (5) advocating the provision of health care services through collaboration with other health service personnel; (6) *executing regimens as prescribed by a physician with an unlimited license to practice medi-* cine or osteopathic medicine, or a licensed *chiropractor, dentist, optometrist, or podiatrist*; (7) administering, supervising, delegating and evaluating nursing activities; and (8) performing acts which are approved by the Indiana state board of nurses' registration and nursing education or in collaboration with the board of medical registration and examination of Indiana; ...." (Emphasis added.)

Ind.Code 25–23–1–1(b).

**5.** For a discussion of a nurse's liability in performing her professional duties *see* Annot., 51 A.L.R.2d 970 (1957).