Lloyd **WRIGHT,** Petitioner,

v.

The **DISTRICT COURT In and For the COUNTY OF JEFFERSON,** State of Colorado, and the Honorable Joseph P. Lewis, one of the Judges thereof, Respondents.

No. 82SA371.

Supreme Court of Colorado, En Banc.

April 18, 1983.

---

DeMoulin, Anderson, Campbell and Laugesen, P.C., Laird Campbell, J. Fern Black, Denver, for petitioner.

George J. Nichols III, William L. Carpenter, Lakewood, for respondents.

DUBOFSKY, Justice.

In this original proceeding, we issued a rule to show cause why the respondent district court's order denying petitioner Lloyd Wright's motion to dismiss a medical malpractice action against him should not be vacated and the case dismissed. We now discharge the rule.

The Adolph Coors Company (Coors) employs the petitioner, a licensed medical doctor, to render medical services to its employees on a full-time basis. In October, 1980, Dr. Wright treated Coors employee Troy Cobb for back injuries suffered in an on-the-job accident. Cobb missed almost a month of work recovering from the accident. Coors and Cobb settled Cobb's resultant claim for worker's compensation. Several days after he returned to the job, Cobb reinjured his back. Cobb then brought a malpractice action against Dr. Wright, alleging that Wright misdiagnosed his injury and advised him to return to work before he had fully recovered. Dr. Wright moved to dismiss the action on the ground that the Colorado Workmen's Compensation Act, section 8–40–101, et seq., C.R.S.1973 and

1982 Supp., provides the exclusive remedy for a workplace injury and immunizes Dr. Wright from Cobb's malpractice action because of Wright's status as a co-employee. Relying on California Supreme Court cases, the Jefferson County District Court denied the motion, finding that Dr. Wright occupied the dual capacity of co-employee and physician and that Wright remained liable to Cobb for any negligence committed within the scope of the doctor-patient relationship.

Dr. Wright brought this original proceeding alleging that the district court exceeded its jurisdiction in refusing to dismiss the suit on the basis of co-employee immunity. We hold that the district court properly concluded that Dr. Wright's status as an employee of Coors does not operate as a total bar to malpractice actions by co-employees such as Cobb. Dr. Wright's relationship with Cobb was identical to that of a doctor in private practice with a patient. This relationship is distinct from the employment relationship; it entails different rights and duties. Clearly, a private doctor would be liable to Cobb for malpractice. There is no logical reason to treat company physicians differently. Thus, the rule which immunizes employees from suits by their co-employees for negligence within the course of employment is inapplicable here.

California has long recognized that a company doctor such as Dr. Wright may operate in the dual capacity of co-employee and physician and is not shielded from malpractice actions by reason of that status. *D'Angona v. County of Los Angeles,* 27 Cal.3d 661, 166 Cal.Rptr. 177, 613 P.2d 238 (1980); *Hoffman v. Rogers,* 22 Cal.App.3d 655, 99 Cal.Rptr. 455 (1972); *Duprey v. Shane,* 39 Cal.2d 781, 249 P.2d 8 (1952).[1] Several jurisdictions in addition to California have adopted the dual capacity approach. *Vesel v. Jardine Mining Co.,* 110

1. Like California, Colorado permits actions in tort by injured employees against third persons for damages which arise from aggravation of an industrial injury. Section 8–52–108(1), C.R.S.1973 authorizes tort actions against "another

not in the same employ." Cal.Labor Code § 3852 (West 1971) (1981 Supp.) authorizes actions against "any person other than the employer."

Mont. 82, 100 P.2d 75 (1939); *Robbins v. Seekamp,* 444 A.2d 537 (N.H.1982); *Guy v. Arthur Thomas Co.,* 55 Ohio St.2d 183, 378 N.E.2d 488 (1978); *Tatrai v. Presbyterian University Hospital,* 497 Pa. 247, 439 A.2d 1162 (1982). *But see McCormick v. Caterpillar Tractor Co.,* 85 Ill.2d 352, 53 Ill.Dec. 207, 423 N.E.2d 876 (1981); *Trotter v. Litton Systems, Inc.,* 370 So.2d 244 (Miss.1979); and *Garcia v. Iserson,* 33 N.Y.2d 421, 353 N.Y.S.2d 955, 309 N.E.2d 420 (1974). *But see also Jenkins v. Sabourin,* 104 Wis.2d 309, 311 N.W.2d 600 (1981) (refusing to adopt dual capacity approach in action against company nurse but acknowledging that company physician remains amenable to suit in tort outside Wisconsin's worker's compensation act). Georgia, Indiana, and Texas have followed the dual capacity rationale in permitting medical malpractice claims against company doctors on an independent contractor theory. *Gay v. Greene,* 91 Ga.App. 78, 84 S.E.2d 847 (1954); *McDaniel v. Sage,* 419 N.E.2d 1322 (Ind. App.1981); *McKelvy v. Barber,* 381 S.W.2d 59 (Tex.1964).[2]

Both *McCormick v. Caterpillar Tractor Co.* and *Jenkins v. Sabourin* turn on statutory interpretation which we find unconvincing. Like Colorado, Illinois and Wisconsin have worker's compensation acts which require an employer to furnish such medical care as is necessary to relieve the effects of a workplace injury. *See* section 8–49–101, C.R.S.1973 and 1982 Supp.; Ill. Ann.Stat. ch. 48, ¶ 138.8(a) (Smith-Hurd 1977) (1981 Supp.); Wis.Stat.Ann. § 102.-42(1) (West 1979) (1982 Supp.). The Supreme Courts of Illinois and Wisconsin interpret those provisions as obligating an employer to provide medical services as an incident of employment and, therefore, conclude that the worker's compensation act is the sole remedy for malpractice by company health providers. *McCormick v. Caterpillar,* 53 Ill.Dec. at 209, 423 N.E.2d at 878; *Jenkins v. Sabourin,* 311 N.W.2d at 604–5. In both cases, the reasoning of the dissent is more persuasive. Colorado's Workmen's Compensation Act does not require Coors or any other employer to maintain and operate a clinic. When an employer voluntarily undertakes to directly render medical treatment to its injured employees, it assumes a function which is not required by the Act and, what is most significant, which is not an integral part of its business. By moving from paying for medical services to rendering them directly, an employer generates obligations which are unrelated to the employment relationship, *McCormick v. Caterpillar,* 53 Ill.Dec. at 211–12, 423 N.E.2d at 880–881 (Simon, J., dissenting); *Jenkins v. Sabourin,* 311 N.W.2d at 613 (Abrahamson, J., dissenting), and which create a new doctor-patient relationship. The metamorpho-

---

2. While not explicitly referring to the dual capacity doctrine, the United States Supreme Court applied this test with approval in *Reed v. The Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). In *Reed,* the Court found that an employer who defended a personal injury action on the basis of the exclusive remedy provision in the Longshoremen's and Harbor Workers' Compensation Act was liable to his employee as a bareboat charterer for injuries arising from the unseaworthiness of the chartered vessel. Finding the exclusivity provision of the Act not to apply, the Court stated:

"[O]nly blind adherence to the superficial meaning of a statute could prompt us to ignore the fact that Pan-Atlantic was not only an employer of longshoremen but was also a bareboat charterer and operator of a ship and, as such, was charged with the traditional, absolute, and nondelegable obligation of seaworthiness which it should not be permitted to avoid.... We think it would produce a harsh and incongruous result, one out of keeping with the dominant intent of Congress to help longshoremen, to distinguish between liability to longshoremen injured under precisely the same circumstances because some draw their pay directly from a shipowner and others from a stevedoring company doing the ship's service. Petitioner's need for protection from unseaworthiness was neither more nor less than that of a longshoreman working for a stevedoring company. As we said in a slightly different factual context, 'All were subjected to the same danger. All were entitled to like treatment under law.' "

(footnotes omitted) 373 U.S. at 415, 83 S.Ct. at 1353. The *Reed* rule was followed in *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342 (5th Cir. 1980) and *Napoli v. Transpacific Carriers,* 536 F.2d 505 (2nd Cir.1976). Congress amended section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act in 1972 to provide that remedies under the Act were exclusive. P.L. 92–576, effective November 26, 1972.

sis in relationships is critical, for while "[i]t is virtually impossible to cause physical injury by writing a check[,] [i]t is very possible to cause physical injury by administering medical treatment to a patient...." Larson, *Workmen's Compensation Insurer as Suable Third Party*, 6 Duke L.J. 1117, 1137 (1969). *But see* 2A Larson, *Workmen's Compensation Law*, § 72.60, *et seq.* (1982).

Although Michigan and New York decline to apply the dual capacity approach in the context of company-run clinics, both states have followed the doctrine where medical services are rendered to a public employee at a hospital which also treats the general public. *Fletcher v. Harafajee*, 100 Mich.App. 440, 299 N.W.2d 53 (1980); *Volk v. City of New York*, 284 N.Y. 279, 30 N.E.2d 596 (1940); *Stevens v. County of Nassau*, 56 A.D.2d 866, 392 N.Y.S.2d 332 (N.Y.App.Div.1977); *compare Garcia v. Iserson, supra.* The distinction drawn is that the employee who is treated in a hospital is receiving the same services available to the public, while the employee who is seen in a company clinic is treated as an incident of employment. Under this reasoning, the former is allowed a cause of action for malpractice but the latter is barred by co-employee immunity. We are not persuaded by this distinction. It is not the *public* practice of medicine which creates a dual capacity for the attending physician; it is the very practice of medicine, with its special duties and responsibilities, which charges a doctor with all of the obligations which normally arise in the doctor-patient relationship. One's need for protection from medical malpractice is not affected by the configuration of the employment relationship or the location of treatment.

A rule exposing a physician to liability for malpractice committed while acting as a company doctor is not inconsistent with either the policies underlying the Workmen's Compensation Act or its general rule of co-employee immunity. The worker's compensation scheme is based upon a mutual compromise of common law rights by employers and workers: when an industrial accident occurs, the employer accepts liability without proof of fault and the worker surrenders potential causes of action in tort for a more limited schedule of benefits. While most workplace accidents have certain characteristics which justify tort immunity for employers and co-employees, these characteristics are not present when the tortfeasor is a company doctor. Five salient distinctions are discussed at length in Jenkins, *The No-Duty Rule in New York: Should Company Doctors Be Considered Co-employees?*, 9 Hofstra L.R. 665, 675–680 (1981), and support the adoption of the dual capacity approach.

First, the worker's compensation scheme is based on the fact that most workplace accidents occur without fault or in a manner making assignment of fault nearly impossible. This assumption is not relevant to injuries resulting from medical malpractice, which occurs away from the production area, is easier to identify, and can be judged in light of ascertainable medical standards.

Second, co-employee immunity embodies a recognition that workplace accidents are less a result of unreasonable conduct than a concomitant of a highly technological age. Unlike the occupational accidents which are an inevitable consequence of working with complex equipment, medical malpractice is neither inevitable nor a risk that is inherent in the production process.

Third, worker's compensation is based in part on the premise that the employer is in a better position than a co-employee to shoulder the risk of an industrial accident. But the higher income and professional liability insurance coverage of company physicians set them apart from the average co-employee.

Fourth, a company physician does not participate in the mutual compromise of rights which is the essence of the worker's compensation scheme. Because the doctor is removed from the production area, he or she is extremely unlikely to be injured on the job. Thus, realistically, the doctor is not sacrificing a common law right to sue in exchange for co-employee immunity.

Fifth, the worker's compensation law provides employers with an economic incentive to deter future accidents by careful job training, supervision, and organization of the workplace. But because a company lacks significant control over the professional acts and exercise of judgment by a company physician, extending co-employee immunity to the physician carries little deterrent effect against the company. Most importantly, co-employee immunity removes almost all deterrence to negligence by the company physician, who, alone among doctors, would be invulnerable to malpractice actions.

Thus, leaving company physicians open to negligence suits satisfies the compensatory purposes of worker's compensation without frustrating the basic principle of a mutual compromise of rights. The dual capacity approach leaves the employer liable under worker's compensation for injuries which the employee is exposed to by employment in the industry—injuries which arise out of a risk or hazard to which the employee is exposed in the performance of the job. "It is only these risks which the legislature intended to be covered by the worker's compensation act." *Jenkins v. Sabourin, supra,* 311 N.W.2d at 613 (Abrahamson, J., dissenting).

Medical malpractice is not an inherent risk of the brewing business. "The medical treatment of injuries is a separate and distinct function ... which does not concern the employer and is not part of the employer's business operations." *Tropiano v. Travelers Insurance Co.,* 455 Pa. 360, 319 A.2d 426, 427 (1974). Coors does not and could not practice medicine.[3] Instead, it must employ licensed physicians such as Dr. Wright to do so. In his practice of medicine for Coors, Dr. Wright enters into doctor-patient, not employee-employee, relationships. He thereby assumes the duty owed by every doctor to every patient.

In recognition of the importance of the doctor-patient relationship and the sound policy considerations underlying the dual capacity doctrine, commentators have urged the adoption of that approach. *See* Jenkins, *Company Doctors, supra;* Kelly, *Workmen's Compensation and Employer Liability: The Dual-Capacity Doctrine,* 5 St. Mary's L.J. 818 (1974); Note, *The Malpractice Liability of Company Physicians,* 53 Ind.L.J. 585 (1978). "Patients and doctors have deeply rooted expectations about their roles in our system of medical care and the legal aspects of their relation.... If a private doctor attempted to disclaim liability for malpractice, the law would take a hard look at that agreement." *McCormick v. Caterpillar Tractor Co.,* 53 Ill.Dec. at 215, 423 N.E.2d at 884 (Simon, J., dissenting).

Contrary to the arguments of the petitioner, our opinion in *Kandt v. Evans,* 645 P.2d 1300 (Colo.1982) does not require rejection of the dual capacity doctrine. *Kandt* held that employees may be liable to their co-employees for intentional torts committed outside the scope of the employment relationship. As its name implies, dual capacity analysis is premised on the principle that a co-employee—here Dr. Wright—simultaneously may occupy the separate statuses of an employee and of a physician licensed to practice medicine under the Colorado Medical Practice Act, *see* 12–36–101, *et seq.,* C.R.S.1973 (1978 Repl.Vol. 5 and 1982 Supp.). Because the allegedly tortious actions here took place in the course of the doctor-patient relationship and outside the scope of the employment relationship, Cobb's malpractice action is not barred by the Workmen's Compensation Act. Therefore, Dr. Wright may be liable in his capacity as a doctor, and the district court correctly denied the motion to dismiss.

Rule discharged.

HODGES, C.J., dissents, and ROVIRA, J., joins in the dissent.

---

**3.** *See, e.g., Moon v. Mercy Hospital,* 150 Colo. 430, 373 P.2d 944 (1962), which held that a hospital could not be found liable for the negligence of a staff doctor which it employed. "[A] hospital ... can not be licensed to, and can not practice medicine and surgery. The relation between doctor and patient is personal." 373 P.2d at 945 (quoting *Rosane v. Senger,* 112 Colo. 363, 149 P.2d 372 (1944)).

HODGES, Chief Justice, dissenting:

I respectfully dissent. The majority holding in my view is contrary to the actual language of our statute, is contrary to our case law, and is contrary to accepted parameters of judicial decision because it amounts to judicial legislation.

It is a firmly established principle of Colorado law in workmen's compensation cases that coemployees are precluded from suing one another for negligent actions causing injury in the course of their employment. The many cases enunciating this principle and its rationale are set forth in *Kandt v. Evans*, 645 P.2d 1300 (Colo.1982). *See also Ellis v. Rocky Mountain Empire Sports, Inc.*, 43 Colo.App. 166, 602 P.2d 895 (1979); *Nelson v. Harding*, 29 Colo.App. 76, 480 P.2d 851 (1971); *Sieck v. Trueblood*, 29 Colo.App. 432, 485 P.2d 134 (1971); *see also Hamblen v. Santa Fe Trail Transportation Co.*, 101 F.Supp. 799 (D.Colo.1951).

The majority holding which carves out an exception to the established case and statutory law when the coemployee is a doctor, is promulgating a new policy in workmen's compensation law which I believe was never intended by our General Assembly. The majority has been persuaded to apply the so called "dual capacity" doctrine which has been enunciated in several California cases. This doctrine would extend personal liability to a coemployee when his work role is separate and distinct from the work done in the ordinary course of the employment.[1] This doctrine is contrary to Colorado precedent and statutory law in my view.

When a doctor is in full-time employment by a company to care for and treat other employees he is clearly, by common sense definition, a coemployee with all other employees under our statutory law. He is acting in the capacity assigned to him as an employee, just as any other employee performs the work for which he was hired.

This view is supported by a leading scholarly analysis and in the majority of states.[2]

The immunity given all coemployees is a rational one under our workmen's compensation statutes. Our Workmen's Compensation Act is based on a compromising of rights, whereby the employer relinquishes normal defenses and becomes automatically liable, and the employee relinquishes previous common law remedies. *Kandt v. Evans, supra.*

The stated reasons of the majority for excepting a company doctor from immunity are unconvincing. To say that an employee who is a company doctor is not an integral part of his employer's business and thus not covered by the Workmen's Compensation Act and its immunity strains logic. A significant percent of a modern company's employees function outside the production area and do work which is separate and distinct from the work done in the so called ordinary course of employment. It is clear, however, that the majority could not truly view this as the salient distinction for otherwise the Workmen's Compensation Act would have little continuing validity—it would cover too few of a company's employees.

The point made by the majority that workplace accidents are frequently not based on fault, but on an increasingly complex technology, can similarly be made for medical accidents. Also, the majority's reasoning that the company doctor (or his carrier) can afford to pay and thus should be personally liable, is a denial of standard constitutional principles of equal protection, and should be shunned by a court of law. Finally, the Workmen's Compensation Act is not fault-based, and thus to reason that doctors alone should be judged on fault, is also contrary to the Act and to fundamental principles of fairness.

1.  *See Hoffman v. Rogers*, 22 Cal.App.3d 655, 99 Cal.Rptr. 455 (1972).

2.  *See, e.g.,* 2 A Larson, *Workmen's Compensation Law*, § 72.61(b) at 14–200–14–207 (1982); *Hayes v. Marshall Field & Co.*, 351 Ill.App. 329, 115 N.E.2d 99 (1953); *Proctor v. Ford Motor Co.*, 36 Ohio St.2d 3, 302 N.E.2d 580 (1973); *Babich v. Pavich*, 270 Pa.Super. 140, 411 A.2d 218 (1979); *cf., Garcia v. Iserson*, 33 N.Y.2d 421, 309 N.E.2d 420, 353 N.Y.S.2d 955 (1974); *but see, e.g., Stevens v. Kimmel*, 394 N.E.2d 232 (Ind.App.1979); *Hoffman v. Rogers, supra.*

In brief, with reference to the "dual capacity" doctrine, "the company doctor does *not* have two capacities. He has one: company doctor." 2 A Larson, *Workmen's Compensation Law,* § 72.61(b), at 14–203 (1982).

The majority has adopted this exception on admittedly "sound policy considerations." It is more proper for the General Assembly to make such a *policy* decision, if it so desires. The defendant's motion to dismiss should not have been denied.

I am authorized to say that Justice RO-VIRA joins in this dissent.