ANTHONY PANARO ET AL. *v.* ELECTROLUX
CORPORATION ET AL.
(13402)

PETERS, C. J., HEALEY, SHEA, GLASS and COVELLO, Js.

Argued May 11—decision released August 16, 1988

*Daniel A. Benjamin,* with whom, on the brief, was *Stephen Gates,* for the appellants (named plaintiff et al.).

*Garie J. Mulcahey,* with whom, on the brief, was *Arnold J. Bai,* for the appellee (defendant Mary Ann Sheehan).

ARTHUR H. HEALEY, J. The sole issue on this appeal is whether the defendant Mary Ann Sheehan, a full-time salaried company nurse, has the status of an independent contractor at her place of employment and therefore may be sued by a fellow employee despite the exclusivity provisions of the Workers' Compensation Act. General Statutes § 31-275 et seq. The named plaintiff, Anthony Panaro, brought an action for malpractice against his employer, the Electrolux Corporation (Electrolux), the named defendant, and the defendant Sheehan, a nurse employed by Electrolux. The plaintiffs[1] alleged that Sheehan's failure to exercise rea-

---

[1] Ruth Panaro, wife of the named plaintiff, Anthony Panaro, is making a claim for loss of consortium.

sonable professional care increased the severity and risk of harm of a stroke that Panaro suffered at the Electrolux facility. The trial court, *Lewis, J.*, granted the defendants' motion for summary judgment, concluding that the plaintiffs' "sole and exclusive remedy against Electrolux and Nurse Sheehan is the statutory proceeding of the Workers' Compensation Act." We find no error.

The complaint, documents, pleadings and affidavits, viewed in the light most favorable to the plaintiffs, reveal the following. Electrolux operated an industrial manufacturing business in Old Greenwich. The defendant Sheehan, a licensed, registered nurse, was hired by Electrolux in October, 1962, to serve as an industrial nurse at its medical facility located at the business. Under the direction of Joel Blumberg, the company physician, and William Blois, the director of human resources, the company medical facility served over 1200 Electrolux employees. The facility was maintained solely for the benefit of its employees. Sheehan worked forty hours a week, received a salary and fringe benefits, and her paycheck was subject to withholding for federal income tax and social security like that of any other regular full-time employee at Electrolux.

The plaintiffs' amended complaint alleged that at approximately 8:15 a.m. on May 12, 1983, Panaro bent down to lift and carry a thirty-pound box of pieces to a conveyor belt. He became "dizzy, foggy, sweaty and disorganized" and then proceeded to the company medical facility. The defendant Sheehan took Panaro's blood pressure, noticed his "dizzied" and disorganized state and had him rest for approximately one hour. Panaro was then sent back to work by Sheehan and, at approximately 3:30 p.m., was found slumped over a chair. Panaro was taken back to the medical facility and Sheehan then sent him to Stamford Hospital by company car. There he was diagnosed as having suf-

fered a cerebrovascular accident, a stroke. Panaro alleges that he suffered various permanent injuries commonly associated with a stroke including brain damage, slurred speech, blurred vision, and muscular weaknesses throughout his body. Panaro was awarded compensation under the Workers' Compensation Act by a finding and award dated March 25, 1986. After the institution of this action, the defendants Electrolux and Sheehan pleaded a special defense that the suit was barred by General Statutes § 31-284 (a)[2] and General Statutes § 31-293a,[3] the exclusivity provisions of

[2] General Statutes § 31-284 provides in part: "BASIC RIGHTS AND LIABILITIES. CIVIL ACTION TO ENJOIN NONCOMPLYING EMPLOYER FROM ENTERING EMPLOYMENT CONTRACTS. (a) An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter, provided nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits."

[3] General Statutes § 31-293a provides: "NO RIGHT AGAINST FELLOW EMPLOYEE; EXCEPTION. If an employee or, in case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. For purposes of this section, contractors' mobile equipment such as bulldozers, powershovels, rollers, graders or scrapers, farm machinery, cranes, diggers, forklifts, pumps, generators, air compressors, drills or other similar equipment designed for use principally off public roads are not 'motor vehicles' if the claimed injury involving such equipment occurred at the worksite on or after October 1, 1983. No insurance policy or contract shall be accepted as proof of financial responsibility of the owner and as evidence of the insuring of such person for injury

the Workers' Compensation Act. The trial court granted the defendants' motion for summary judgment, opining that Connecticut would follow the majority rule, which rejects the dual capacity doctrine, and determining therefore the plaintiffs' exclusive and sole remedy against the defendants is the statutory proceeding of the Workers' Compensation Act.

On appeal, the plaintiffs claim that the trial court erred in rejecting the dual capacity doctrine by refusing to recognize that Sheehan, as a company nurse, could be an independent contractor as to one part of her service and an employee as to another part of her service and therefore fall outside the fellow employee rule of the Workers' Compensation Act.[4] We agree with the ruling of the trial court.

The dual capacity or independent contractor doctrine has never been addressed by this court in the context of workers' compensation. The doctrine[5] was first

to or death of persons and damage to property by the commissioner of motor vehicles required by chapter 246 if it excludes from coverage under such policy or contract any agent, representative or employee of such owner from such policy or contract. Any provision of such an insurance policy or contract effected after July 1, 1969, which excludes from coverage thereunder any agent, representative or employee of the owner of a motor vehicle involved in an accident with a fellow employee shall be null and void."

[4] The plaintiffs have not appealed from the judgment as to the first count of their complaint. That count alleged that the defendant Mary Ann Sheehan was an employee of Electrolux but that she had an independent legal duty to use the requisite standard of care in the performance of her profession. The first count also named Electrolux as a defendant. The second count is directed against Sheehan alone, and thus she is the only defendant on this appeal. Electrolux then intervened in the case as a third party plaintiff pursuant to General Statutes § 31-293 in order to obtain reimbursement for workers' compensation benefits that it had paid to Panaro. It has adopted the position of the plaintiffs for the purposes of this appeal.

[5] The plaintiffs and case law from other jurisdictions use the terms "dual capacity" and "independent contractor" when discussing liability for employees. Compare *Young* v. *St. Elizabeth Hospital*, 131 Ill. App. 193, 475 N.E.2d 603 (1985) (using the term dual capacity), with *McDaniel* v. *Sage*, 419 N.E.2d 1322 (Ind. App. 1981) (using the term independent con-

announced in *Duprey* v. *Shane,* 39 Cal. 2d 781, 793, 249 P.2d 8 (1952), where the California Supreme Court permitted a nurse, who worked for a chiropractic partnership, to bring a medical malpractice claim against her employer after she had been injured in the course of her employment and allegedly had received negligent treatment from one of the partner physicians. The court found that a relationship of physician/patient had arisen in addition to that of employer/employee. This separate and distinct relationship gave rise to a duty, the breach of which permitted an action of malpractice. Id.; see also *D'Angona* v. *County of Los Angeles,* 27 Cal. 3d 661, 669, 613 P.2d 238, 166 Cal. Rptr. 177 (1980); *Hoffman* v. *Rogers,* 22 Cal. App. 3d 655, 662, 99 Cal. Rptr. 455 (1972); but see *Dixon* v. *Ford Motor Co.,* 53 Cal. App. 3d 499, 507, 125 Cal. Rptr. 872 (1975) (noting the refusal of several cases to extend the rationale of *Duprey* v. *Shane,* supra, to different factual contexts). More recently, the reach of the dual capacity doctrine in California has been limited by its legislature. Cal. Lab. Code § 3602 (Deering 1988).

A number of other jurisdictions have adopted the dual capacity or independent contractor doctrine in some form. See, e.g., *Wright* v. *District Court,* 661 P.2d

---

tractor). The "dual capacity" doctrine, however, more often describes the situation where an employer has two capacities, such as employer and owner; see, e.g., *Ogden* v. *McChesney,* 41 Colo. App. 191, 193, 584 P.2d 636 (1978); or employer and product seller. See, e.g., *Bell* v. *Industrial Vangas, Inc.,* 30 Cal. 3d 268, 282, 637 P.2d 266, 179 Cal. Rptr. 30 (1981). A noted authority explained the "dual capacity" doctrine as follows: "An employer may become a third person, vulnerable to tort suit by an employee if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." 2A A. Larson, Workmen's Compensation Law (1983) § 72.81, p. 14-229. The independent contractor doctrine for employees concerns a situation where a person, although an employee under the ordinary meaning of the word and for most purposes, can be an independent contractor for other purposes. See, e.g., *McDaniel* v. *Sage,* supra.

1167, 1171 (Colo. 1983) (a company physician is an independent contractor); *McDaniel* v. *Sage,* 419 N.E.2d 1322, 1326 (Ind. App. 1981) (a nurse is liable as an independent contractor); *Guy* v. *Thomas Co.,* 55 Ohio St. 2d 183, 190, 378 N.E.2d 488 (1978) (a hospital that has dual capacity as employer and health provider is liable to employee); *Tatrai* v. *Presbyterian University Hospital,* 497 Pa. 247, 256, 439 A.2d 1162 (1982) (Roberts, J., concurring) (a hospital that has dual capacity as employer and health provider is liable to employee); but cf. *McAlister* v. *Methodist Hospital of Memphis,* 550 S.W.2d 240 (Tenn. 1977); see also annot., 23 A.L.R.4th 1151, 1156 (1983); comment, "The Dual Capacity Doctrine: Piercing the Exclusive Remedy of Workers' Compensation," 43 U. Pitt. L. Rev. 1013, 1026–28 (1982) (survey of case law). Not all of the decisions cited above, however, concern the fact pattern present in the instant case: a claim of negligence against a full-time company nurse employed at a company facility other than a hospital. Some courts have held that company doctors should be treated differently from other fellow employees and be held liable for negligent treatment at the workplace. See, e.g., *Wright* v. *District Court,* supra. Other courts have permitted negligence claims against a doctor who serves the company as an independent contractor. See, e.g., *Gay* v. *Greene,* 91 Ga. App. 78, 81, 84 S.E.2d 847 (1954); *McKelvy* v. *Barber,* 381 S.W.2d 59, 63 (Tex. 1964). The company physicians in those cases were not regular company employees but received a fee for services rendered. In other jurisdictions, it is the fact that hospital employees were involved that permitted liability against health care providers who employ them. See, e.g., *Guy* v. *Thomas Co.,* supra; *Tatrai* v. *Presbyterian University Hospital,* supra. The logic of these decisions rests on the premise that a health care facility that is open to the public should not be shielded from liability simply

because the patient it treats negligently happens to be one of its employees who is injured on the job.

The only case cited by the plaintiffs that actually holds that a company nurse at a facility other than a hospital can be sued for negligence is *McDaniel v. Sage,* supra. There a company nurse, who faced allegations of negligence in administering an injection, was not able to use the fellow employee rule of the Workmen's Compensation Act to preclude an action against her. Id., 1326. The court held that a licensed registered nurse was engaged in an "independent profession" and "relied on her training, experience and skill as a professional . . . ." Id., 1325–26. The court concluded that the nurse's liability arose from her nurse/patient relationship and not from an employer/employee relationship, and therefore that the nurse was an independent contractor. Id., 1326.

A greater number of jurisdictions, however, have rejected the dual capacity or independent contractor doctrine for alleged negligence by company physicians and nurses. See, e.g., *Young v. St. Elizabeth Hospital,* 131 Ill. App. 3d 193, 196, 475 N.E.2d 603 (1985); *Jones v. General Motors Corporation,* 136 Mich. App. 251, 257–58, 355 N.W.2d 646 (1984); *Boyle v. Breme,* 187 N.J. Super. 129, 132, 453 A.2d 1335 (1982); *Garcia v. Iserson,* 33 N.Y.2d 421, 422–23, 309 N.E.2d 420, 353 N.Y.S. 955 (1974); *Proctor v. Ford Motor Co.,* 36 Ohio St. 2d 3, 6, 302 N.E.2d 580 (1973); *Babich v. Pavich,* 270 Pa. Super. 140, 145, 411 A.2d 218 (1979). Even before the legislature narrowed the dual capacity doctrine, courts in California limited *Duprey v. Shane* to its facts. In *Dixon v. Ford Motor Co.,* supra, the court refused to hold an employer, its company nurse and its orderly liable for negligent treatment of an employee. The court noted that *Duprey* was "unique because the employer happened to be a doctor." Id., 507. Other jurisdictions refuse to hold the employer liable for negli-

gent actions by company physicians. See, e.g., *Warwick* v. *Hudson Pulp & Paper Co.,* 303 So. 2d 701, 703 (Fla. App. 1974); *Trotter* v. *Litton Systems, Inc.,* 370 So. 2d 244, 247 (Miss. 1979).

The reasons given for rejecting the dual capacity or independent contractor theory are varied but include the fact that company health providers are bona fide regular employees, who have annual salaries, fixed hours and work under the employer's supervision; see, e.g., *Babich* v. *Pavich,* supra; that the health providers are furthering the primary business interests of the employer; see, e.g., *Proctor* v. *Ford Motor Co.,* supra; that the health service is limited to employees and not the general public; see, e.g., *Garcia* v. *Iserson,* supra, 423; and that carving out exceptions to a workers' compensation act is a legislative function. See, e.g., *Boyle* v. *Breme,* supra, 133. The decision of the Indiana court in *McDaniel* v. *Sage,* supra, was severely criticized by a leading authority in the field of workers' compensation as follows: "The short answer to the Indiana approach is that company doctors, and nurses, like salaried lawyers, interns, and other professional persons, are now routinely held to be employees for purposes of compensation benefits, and it is unthinkable that a legislature should intend that a given person should be an employee under the act for one purpose and an independent contractor for another." 2A A. Larson, Workmen's Compensation Law (1983) § 72.61 (b), pp. 14-228.48–228.49.

Although the weight of authority therefore supports Sheehan's position, we now must look to our own Workers' Compensation Act and the cases interpreting it. General Statutes § 31-293a provides that the right to compensation "shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee." The only exceptions, specifically set out in § 31-293a, are a wilful or

malicious wrong or an action based on a fellow employee's operation of a motor vehicle. An "employee," as defined in General Statutes § 31-275,[6] is "any person who has entered into or works under any contract of service or apprenticeship with an employer . . . ." "The purpose of the workmen's compensation statute is to compensate the worker for injuries arising out of

[6] General Statutes § 31-275 (5) provides: " 'Employee' means any person who has entered into or works under any contract of service or apprenticeship with an employer, whether such contract contemplated the performance of duties within or without the state or a sole proprietor or business partner who accepts the provisions of this chapter in accordance with subdivision (5) of this section, and shall include any person elected to serve as a member of the general assembly of this state and shall also include any salaried officer or paid member of any police department or fire department and any elected or appointed official or agent of any city, town or borough, upon vote of the proper authority of such city, town or borough, including such elected or appointed official or agent, in the state, irrespective of the manner in which he is appointed or employed, which provision shall not be construed as affecting any existing rights as to pensions which such persons or their dependents had on July 1, 1927, or as preventing any existing custom of paying the full salary of any such person during disability due to injury arising in the course of and out of his employment or any volunteer police officer, whether such officer is designated as special or auxiliary, upon vote of the legislative body of the city, town or borough in which such officer serves; but said term shall not be construed to include: (A) An outworker; (B) one whose employment is of a casual nature, and who is employed otherwise than for the purposes of the employer's trade or business; (C) a member of the employer's family dwelling in his house; but, if in any contract of insurance the wages or salary of a member of the employer's family dwelling in his house is included in the payroll on which the premium is based, then such person shall, in the event of his sustaining an injury arising out of and in the course of his employment, be deemed an employee and compensated accordingly; (D) any person engaged in any type of service in or about a private dwelling provided he is not regularly employed by the owner or occupier over twenty-six hours per week; or (E) an employee of a corporation who is a corporate officer and who elects to be excluded from coverage under this chapter by notice in writing to his employer and to the commissioner having jurisdiction. For the purpose of determination of benefits payable under this chapter for death, disability or injury incurred by volunteer police officers, the average weekly wage of such officers shall be the average production wage in the state as determined by the labor commissioner under the provisions of section 31-309."

and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer." *Jett* v. *Dunlap,* 179 Conn. 215, 217, 425 A.2d 1263 (1979). The Workers' Compensation Act "compromise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 97, 491 A.2d 368 (1985); see also 81 Am. Jur. 2d, Workmen's Compensation § 2 (1976); 2A A. Larson, supra, § 72.61, p. 14-228.49; A. Larson, "The Nature and Origins of Workmen's Compensation," 37 Cornell L.Q. 206 (1952). Therefore, "[t]he act provides the exclusive remedy to employees sustaining work related injuries or death from such injuries 'caused by the negligence or wrong of a fellow employee . . . .' General Statutes § 31-293a." *Mingachos* v. *CBS, Inc.,* supra, 113; see *Sullivan* v. *State,* 189 Conn. 550, 558, 457 A.2d 304 (1983); *Morin* v. *Lemieux,* 179 Conn. 501, 503, 427 A.2d 397 (1980). Under the plain meaning of the statute and the cases interpreting it, there is no right to bring a direct action against the defendant Sheehan.

This court, however, has carved out a few exceptions to the exclusivity of the Workers' Compensation Act provisions. See, e.g., *Blancato* v. *Feldspar Corporation,* 203 Conn. 34, 43, 522 A.2d 1235 (1987) (exception for a minor who has been illegally employed); *Jett* v. *Dunlap,* supra, 221 (exception for intentional torts committed by an employer). On the other hand, this court refused to extend the *Jett* exception to include " 'accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury.' " *Mingachos* v. *CBS, Inc.,* supra, 108, quoting 2A A. Larson, Workmen's Compensation Law (1976) § 68.13, p. 13-8.

We decline to carve out an additional exception as the plaintiffs suggest. First, we note that both of these exceptions are for *employers,* not employees. Since one of the purposes of the statutory immunity of a fellow employee is to shield those who are usually unable to satisfy judgments involving serious injuries,[7] exceptions to the immunity from liability at common law for employers, who are generally able to satisfy such judgments, are based on different policy considerations. Further, the employer exceptions have been fashioned for rather egregious circumstances: either for an illegally employed minor or for an intentional tort committed by one employee upon another at the direction of the employer. To this date there has not been a judicially created exception to the exclusivity provisions of the Workers' Compensation Act for fellow employees. The sole exceptions for employees are set out in General Statutes § 31-293a and are applicable when the injury results from either a wilful or malicious wrong or from the operation of a motor vehicle. The legislative history indicates that the purpose of the fellow employee rule was recognized by the legislature and the exceptions were the result of deliberate consideration of competing policy concerns.[8]

Even if we were inclined to create an exception to the fellow employee rule, the arguments presented by the plaintiffs are not persuasive in the factual circum-

[7] Representative Paul Pawlak commented as follows: "Section 5. This section stops third party suits against fellow employees since such employee usually is unable to meet any judgment involving serious injuries. However, the section specifically permits suits against fellow employees where the injury or death was the result of wilful or malicious wrong by such fellow employee or involves the operation of a motor vehicle. We are here trying to make sure that a fellow employee cannot ordinarily be sued for simple negligence on the job, but we do not believe that he should be protected against wilful or malicious wrong, nor do we believe he should be protected if the employee is injured as a result of a motor vehicle accident." 12 H.R. Proc., Pt. 9, 1967 Sess., p. 4035.

[8] See footnote 7, supra.

stances presented in this case. First, Sheehan is a nurse and not a doctor. Part of the rationale for holding a doctor or hospital liable is an ability, due "to higher income and professional liability insurance," to bear the risk of an industrial accident. *Wright* v. *District Court,* supra, 1170. Although the individual defendant in this case had insurance, it is not certain that all such company nurses would have insurance sufficient to cover substantial personal injury verdicts. Second, many of the cases holding health care providers liable involve hospitals or doctors as the employer. See, e.g., *D'Angona* v. *County of Los Angeles,* supra; *Guy* v. *Thomas Co.,* supra; *Tatrai* v. *Presbyterian University Hospital,* supra. Not only are these cases an exception to *employer* immunity from liability, as opposed to an exception to fellow *employee* immunity from liability, but also those cases rested on the rationale that there is no basis for distinguishing the treatment of a hospital employee, who is a patient with a compensable injury, from the treatment of any other member of the general public who is also a hospital patient.

Not only can many of the cases from other jurisdictions cited by the plaintiffs be distinguished, but a number of factors relied on by those cases that deny liability for company nurses or physicians are present in this case. First of all, Sheehan is a full-time employee, with regular hours, a salary, benefits and is subject to withholding taxes by her employer. These factors were considered significant in *Babich* v. *Pavich,* supra. Other factors, considered important by New York in *Garcia* v. *Iserson,* supra, 423, include whether the service was limited to employees and not available to the general public, and whether the employee received health care only as a consequence of his employment. If so, the injured employee was barred from suing a fellow employee by the exclusivity provisions of the act. Id., 424. Both factors are present

here: the medical service was limited to employees of Electrolux, and Panaro received such service only as a consequence of his employment. Further, although providing medical service is not the primary business of these employers, such service directly benefits the employee while also furthering the business interest of the employer. In *Proctor* v. *Ford Motor Co.,* supra, 6, the court recognized that the business of Ford is making cars, "yet to say that its maintenance of a fully-staffed plant medical facility is unrelated to producing cars ignores the reality of modern industrial life."

The plaintiffs rely heavily on two Connecticut cases that support the concept of a person holding both employee and independent contractor status at the same time. In *Beaverdale Memorial Park, Inc.* v. *Danaher,* 127 Conn. 175, 15 A.2d 17 (1940), we held that, for purposes of state unemployment insurance, a person could simultaneously be a general manager and employee as well as a sales manager and independent contractor under the facts of that case. An examination of certain material facts in *Beaverdale Memorial Park, Inc.,* demonstrates that it is inapposite here. For example, in *Beaverdale Memorial Park, Inc.,* the parties had executed two written contracts. Under one, Eugene A. Sexton was put in charge of the cemetery as general manager, and under the other, he was placed in charge of the selling organization as sales manager. In that case, the salesmen were employed and discharged by Sexton only, were paid individually by his personal check, had no direct dealings with the cemetery corporation or any of its officers, did not work any stated hours but only as Sexton directed, were accountable to no one but Sexton, and their compensation was not controlled by the cemetery corporation or its officers. Id., 180. This factual pattern significantly distinguishes *Beaverdale Memorial Park, Inc.,* from the case before us.

A more recent case, *Spring* v. *Constantino,* 168 Conn. 563, 362 A.2d 871 (1975), concerned whether a public defender could use the defense of sovereign immunity in a suit for malpractice. This court held that "[a] person may be a contractor as to part of his service and a servant as to another part. *Scorpion* v. *American-Republican, Inc.,* 131 Conn. 42, 45, 37 A.2d 802 [1944]; *Clough* v. *Estate of Malley,* 126 Conn. 379, 382, 11 A.2d 398 [1940]." Id., 574. The court in *Spring* concluded that "the status of the public defender, once the attorney-client relationship attaches, is that of an independent contractor rather than that of an employee." Id. It must be recognized that *Spring* is a sui generis case as there we said that "it is clear as a matter of law that the status of the public defender, *once the attorney-client relationship attaches,* is that of an independent contractor rather than that of an employee." (Emphasis added.) Id. It was at that time that his "employer," i.e., the state, had no more right to interfere with the conduct of his defense than had it been conducted by a privately employed attorney. Id., 575. Although we do not question the logic of *Beaverdale Memorial Park, Inc.,* or *Spring,* they are inapposite to this case. Moreover, we note that neither case involved workers' compensation and its complex legislative scheme that balances competing policy concerns, but rather addressed the unrelated topics of sovereign immunity and unemployment insurance. These decisions do not avail the plaintiffs.

The plaintiffs also rely on *Spring* v. *Constantino,* supra, for the premise that " '[t]he fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control the means and method of work.' " Id., 573, quoting *Beaverdale Memorial Park, Inc.* v. *Danaher,* supra, 179. The plaintiffs, citing *McDaniel* v. *Sage,* supra, argue that Sheehan, as a trained profes-

sional, had an independent relationship with her patients and therefore was not under the control of her employer. Although it is reasonable to say that nurses and other professionals, by virtue of their skill and training, are not under the direct supervision of their employers when using their expertise, the plaintiffs' argument proves too much. Under their reasoning, all employees with skills beyond the knowledge of ordinary supervisors, including those subject to licensing, such as doctors, nurses, engineers and architects, would be subject to tort actions as independent contractors. We decline to follow that reasoning and conclude that the better distinction between employees and independent contractors for workers' compensation purposes is stated in *Spring* v. *Constantino,* supra. There we adopted the following definition of independent contractor: " 'one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without subject to the control of his employer, except as to the result of his work.' " Id., quoting *Alexander* v. *R.A. Sherman's Sons Co.,* 86 Conn. 292, 297, 85 A. 514 (1912). Clearly, Sheehan in this case does not fall within that definition of independent contractor.

We recognize that the legislature constructed the Workers' Compensation Act as a compromise between an "employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." *Mingachos* v. *CBS, Inc.,* supra, 97. "Under typical workers' compensation statutes, employers are barred from presenting certain defenses to the claim for compensation, the employee's burden of proof is relatively light, and recovery should be expeditious." Id. The fellow employee immunity of General Statutes § 31-293a is part of that comprehensive scheme and compromise. Although there have been two judicially created exceptions to employer liability, both

arose in the context of egregious circumstances, not simple negligence. There have been no judicially created exceptions for fellow employee liability and for good reason. When it fashioned the fellow employee rule, the legislature provided for two exceptions in the statute and it must be presumed to have rejected other possible exceptions. " 'Unless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive.' " *State* v. *Kish,* 186 Conn. 757, 766, 443 A.2d 1274 (1982); *The B.F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 6, 490 A.2d 991 (1985). For this court to create an exception to the fellow employee rule for company nurses would "usurp the legislative function." *Mingachos* v. *CBS, Inc.,* supra, 106. We recognize that over the years the legislature has worked out a complex statutory scheme in promulgating workers' compensation statutes and that "[a]n integral part of this complex structure is the accepted proposition that an employee surrenders other claims for the certainty of the exclusive workers' compensation remedy." *Boyle* v. *Breme,* supra, 132. Such a "comprehensive, well thought out legislative scheme should not be tinkered with by the courts." *Jenkins* v. *Sabourin,* 104 Wis. 2d 309, 323, 311 N.W.2d 600 (1981). As one court recognized, "[a] damage suit as an alternative or additional source of compensation, becomes permissible only by carving a judicial exception in an uncarved statute. . . . Neither moral aversion to the employer's act nor the shiny prospect of a large damage verdict justifies interference with what is essentially a policy choice of the Legislature." *Azevedo* v. *Abel,* 264 Cal. App. 2d 451, 459, 70 Cal. Rptr. 710 (1968); accord *Mingachos* v. *CBS, Inc.,* supra, 106. The theme of legislative preeminence in the workers' compensation area is echoed in many jurisdictions. See, e.g., *Herbert* v. *Gulf States Utilities Co.,* 369 So. 2d 1104, 1107 (La. App. 1979); *Jones* v. *Bouza,* 381 Mich. 299,

302, 160 N.W.2d 881 (1968); *Trotter* v. *Litton Systems, Inc.*, supra, 247; *Boyle* v. *Breme*, supra, 133. We decline to create an exception to the fellow employee rule of the Workers' Compensation Act under the circumstances of this case. Therefore, summary judgment was properly granted by the trial court.

There is no error.

In this opinion the other justices concurred.