PROCTOR, APPELLANT, *v.* FORD MOTOR CO. ET AL., APPELLEES.

(No. 31364—Decided November 9, 1972.)

Messrs. *Ticktin & Kabb*, for appellant.
Messrs. *Hauxhurst, Sharp, Mollison & Gallagher*, for appellees.

DAY, J. This case comes here from the Court of Common Pleas of Cuyahoga County after that court sustained the motions for summary judgment filed by the corporate and individual defendants.

The parties will be designated in this opinion as "plaintiff," "corporate defendant" and "individual defendants." Plaintiff appeals.

I.

The facts are simple, clear-cut and not in issue. The plaintiff suffered a compensable injury in the course of or arising out of his employment. He elected, as R. C. 4123.651 allows, to be treated at the corporate defendant's industrial clinic where he claims his injury was aggravated by the malpractice of the individual defendants who are medical doctors employed by the Ford Motor Company Clinic and, in that capacity, are full time salaried employees of the corporate defendant.

Plaintiff sued the individual defendants for malpractice and the corporate defendant for negligence in selecting and supervising its medical personnel and for attempting to practice medicine in its corporate capacity. The joinder of principal and agent raises the ancillary question of permissible joinder of these defendants should they be determined to occupy a *respondeat superior* relation positing liability for the corporate defendant. However, the vital underlying question is the effect of the workmen's compensation statute on the defendants' liability[1] whether they be corporate or individual.

The court below apparently felt the act to be an im-

---

[1] The resolution of legal questions relating to liability will determine whether the joinder issue remains a viable issue.

penetrable shield to tort liability for all the defendants and, the facts not being in dispute, granted the motions for summary judgment. We reverse the judgment for the individual defendants.[2] We affirm the judgment for the corporate defendant.

## II.

The plaintiff assigns two errors:

1. The trial court erred in granting the motion of the defendant, Ford Motor Company, for summary judgment.

2. The trial court erred in granting the motion for summary judgment of the defendants, Edward F. Arscott, M. D., and Constantine A. Papas, M. D.

Reduced to lower terms, these assignments raise two issues:

(1) Are the individual defendants, the medical doctors, liable for malpractice in the light of the immunity from response in damages which R. C. 4123.741 provides for an employee of an employer for injuries received by "any other" employee "in the course of and arising out of the latter employee's employment. . . . ?"

(2) Is there any negligence principle which goes beyond statutory workmen's compensation liability and binds the complying defendant employer in this case to respond in damages[3] for the aggravation of the plaintiff employee's compensable injuries caused by the malpractice of the defendant-employer's full time, salaried medical personnel?

An issue common to both (1) and (2) is whether injuries aggravated by the malpractice stemming from treatment of a compensable injury can be said, under the statute, to have been received in the course of and arising out of the injured employee's employment. Only if the answer to that common question is affirmative, do the immunization issues in (1) and (2) above become viable.

---

[2] Our reversal touches only the ruling on the motions. It does not reach the merits of the case as these may develop at trial.

[3] Cf. R. C. 4123.74. This section provides in pertinent part: "Employers who comply . . . shall not be liable to respond in damages at common law or by statute for any injury . . . or bodily condition, received . . . by any employee in the course of or arising out of his employment. . . ."

We shall treat issues (1) and (2) in reverse order.

### III.

It is the Ohio rule in workmen's compensation cases that the aggravation of a compensable injury from the course of treatment is also compensable. The theoretical basis for the rule is that the aggravation would not have occurred but for the original injury, and therefore that the exacerbation is attributable to the original injury of the employee "in the course of or arising out of his employment," *Anderson* v. *Libbey Glass Mfg. Co.*, 6 Ohio Law Abs. 400, 400-401 (App. 6th Dist. Lucas Cty., 1928).[4] The reach of the rule extends liability to the employer on the same limited terms of partial immunity that the Workmen's Compensation Act establishes for the initial injury, Section 35, Article II, Ohio Constitution, R. C. 4123.74, and the remedy under the Act is exclusive.[5] The corporate defendants, therefore, cannot be subjected to response for the plaintiff's hurt on any theory of liability outside the remedies provided by the Workmen's Compensation Act. Consequently, the granting of the corporate defendant's motion for summary judgment must be affirmed. The answer to question (2) is "No."

R. C. 4123.741 of the Act also establishes total immunity from damages for all employees of the employer, "as defined in division (B) of Section 4123.01 of the Revised Code, . . . " for the injuries "received . . . by any other employee of such employer in the course of and arising out of the latter employee's employment. . . ." Because of the near identity in dispositive statutory terminology in R. C. 4123.74 (cf. fn. 3) and 4123.741 (*i. e.*, "in the course" and "arising out of"),[6] it is both logical and clear that

---

[4] See *Loeser* v. *Humphrey* (1884), 41 Ohio St. 378, 382-383, on aggravating malpractice as a proximate consequence of any original, primary, tortious act.

[5] *Bevis* v. *Armco Steel Corp.* (1949), 86 Ohio App. 525, 533, 93 N. E. 2d 33, 36.

[6] The use of the disjunctive in R. C. 4123.74 and conjunctive in Section 4123.741 seems of no consequence for the present case. Except for the use "and" in the latter section in place of "or," the crucial words are the same.

any employee within the ambit of the statutory definitions has the same immunity from damage response for aggravation of injuries as for the initial injury.

If this analysis is correct, the individual defendants are totally immune from response for any injury suffered by a fellow employee which is compensable under the Workmen's Compensation statute of Ohio, unless the individual defendants do not have the employee status necessary to claim the protection afforded by R. C. 4123.741. We turn to that question.

## IV.

A line of Ohio cases, decided before the enactment of R. C. 4123.741, considered the question of fellow-servant immunity. The conclusion was:

"... If the protection of the present workmen's compensation law of this state is to be expanded to include fellow employees as well as employers ['protection' refers to immunity], this is a question of legislative policy to be determined by the General Assembly or by constitutional amendment.'" (Bracketed explanation added.)

The subsequent enactment of R. C. 4123.741 put to rest the issue of fellow-employee immunity. What remained ambiguous, and therefore unclear and requiring interpretation, were the limits of the category. The body of R. C. 4123.741 did not include the phrase "fellow employee." It was couched entirely in terms which use the words "employee" and "employer" to define the persons immunized, and incorporated the statutory definition of employee by reference. Thus the significant parts of the workmen's compensation statutes on this issue lie with the definitions, and the question is narrowed to the meaning of "em-

---

[7]*Gee* v. *Horvath* (1959), 169 Ohio St. 14, 18, 157 N. E. 2d 354, 357. See, also, *Ellis* v. *Garwood* (1958), 168 Ohio St 241, 246-247, 152 N. E. 2d 100, 103; *Morrow* v. *Hume, Admx.* (1936), 131 Ohio St. 319, 326, 3 N. E. 2d 39, 42. Cf. *Landrum* v. *Middaugh* (1927), 117 Ohio St. 608, 616-617, 160 N. E. 691, 693, immunizing a foreman from suit under the Workmen's Compensation Act on the theory that his acts were the employer's whose immunity was clear. Query, whether the Legislature intended that a house physician occupy the same status as a foreman in relation to the employer?

ployee'' in the fellow-employee immunization section.[8]

A literal reading of the latter section without recourse to the statutory definitions supports immunity for individual house physician defendants. If we were to stop short of the definitions, the resolution of this issue in this case would be easy. However, in our view the definitions introduce an ambiguity requiring an examination of legislative intent.[9]

---

[8]The heading of this section is "Fellow employees' Immunity from Suit." Titles and sub-titles have been held to be part of the Ohio statutes, *Harris* v. *State* (1897), 57 Ohio St. 92, 94, 48 N. E. 284, but the use of the phrase "fellow employee" does not provide the clarity to dispose of the issue here particularly in view of the more elaborate definitions of "employee" in the definitional sections of the statute. Moreover, the idea that the Legislature intended to include the company house physician as a "fellow employee" of production workers is a startlingly illogical concept, and for that reason may bear on legislative intent.

[9]Apparently, the Ohio rule of statutory construction is that when the words of the statute are clear and unambiguous, the language is not subject to judicial dilation. The intent of the Legislature is what it plainly expresses. *Woodbury & Co.* v. *Berry* (1869), 18 Ohio St. 456, 461; *P. C., C. & St. L. Ry. Co.* v. *Naylor* (1905), 73 Ohio St. 115, 120-121, 76 N. E. 505, 506; *State, ex rel. Foster,* v. *Evatt* (1944), 144 Ohio St. 65, 104-105, 56 N. E. 2d 265. So far as our researches reveal, the Supreme Court of Ohio has not had occasion to apply the rule to a result clearly absurd in the light of a legislative objective. But see the reference to *United States* v. *Missouri Pacific Rd. Co.* (1929), 278 U. S. 269, in *Cleveland Trust Co.* v. *Eaton* (1970), 21 Ohio St. 2d 129, 138, 256 N. E. 2d 198, 204. However, on at least two occasions the more recent cases have said, or seemed to say, that legislative intent is *primarily* determined from the statutory language. See *Iddings* v. *Board of Edn.* (1951), 155 Ohio St. 287, 290, 98 N. E. 2d 827, 829; cf. *State, ex rel. Wallace,* v. *Celina* (1972), 29 Ohio St. 2d 109, 112-113, 279 N. E. 2d 866, 868-869. Query, whether this represents some movement away from the "plain expression" or "literal language" view. In *Jasinsky* v. *Potts* (1950), 153 Ohio St. 529, 533-534, 92 N. E. 2d 809, 811, the court interpreted language to reach a just result, but kept the literal language rule intact, at least formally, by reading "person" to include an unborn "viable child" and thereafter holding that the statute is "clear, unambiguous and does not require interpretation." But see *Lape* v. *Lape* (1918), 99 Ohio St. 143, 148, 124 N. E. 51, 53, where the court held that legislative intent will prevail over the literal statutory terms even though the latter are quite clear.

This conclusion makes it unnecessary to unscramble whatever mix the precedents on interpretation represent. This is so because the Ohio rule is clear that legislative intent must be consulted in resolving ambiguities. (See fn. 9)

## V.

The ambiguity, it seems to us, stems in part from that portion of the definition in R. C. 4123.01(B), incorporated by reference into Section 4123.741. The language of R. C. 4123.01(B) relevant to the instant case reads:

"(2) Every person, firm, and private corporation, including any public service corporation, that (a) has in service three or more *workmen or operatives regularly in the same business* or in or about the same *establishment* under any contract of hire . . . is bound . . . to pay into the insurance fund. . . .

". . . Any member of a firm or association, who *regularly performs manual labor in or about a mine, factory, or other establishment,* but not including a household establishment, shall be considered a *workman or operative* in determining whether such person, firm, or private corporation, or public service corporation, has in its service three or more *workmen* and the income derived from such labor shall be reported to the industrial commission as part of the payroll of such employer, and such member shall thereupon be entitled to all the benefits of an employee. . . ."[10]

Statutory definitions, when clear, are controlling. *Benua* v. *Columbus* (1959), 170 Ohio St. 64, 67, 162 N. E. 2d 467, 469. However, it is decidedly not clear that a physician in a company clinic is a "workman" or "operative" in the "same business" as production workers and operatives in or related to the production process for the same company. Nor is it clear that a physician employed full time in and about such an industrial clinic can be said to be regularly employed in the "same establishment" as the factory workers.

Obviously medical doctors working in company clinics

---

[10]Comparable language is incorporated in R. C. 4123.01(A)(2).

are not ordinarily classified as "workmen," "operatives," or performers of "manual labor."

Applying the construction maxim *ejusdem generis* to the generalization "or other establishment," the general words should be construed as restricted to things of the same kind as those enumerated, *i. e.*, to things bearing a similarity to a "mine" or "factory." Patently, a medical clinic is not in either category. See *Glidden Co.* v. *Glander* (1949), 151 Ohio St. 344, 349-350, 86 N. E. 2d 1, 4; *State* v. *Aspell* (1967), 10 Ohio St. 2d 1, 4, 225 N. E. 2d 226, 228; and *State* v. *Saionz* (1969), 23 Ohio App. 2d 79, 82-83, 261 N. E. 2d 135, 138. It follows that were we to stretch a point and consider a physician a manual laborer, workman or operative, his medical work in a clinic still would not meet the establishment test.

Thus, any review of the immunization section for fellow employees[11] in connection with the definition attached to the words "employee" and "employer," key words in the exemption, permits either the conclusion that the immunity extends *only* to persons in *workman* or *operative* categories *regularly* performing *manual* labor in mines, factories, or in *establishments* which are the *same* or *similar* or, at best, that the boundaries of the immunity are unclear. Of course, as we have indicated, if the definitions[12] are ignored, the immunity perimeter seems all-inclusive and

---

[11]R. C. 4123.741.

[12]One possible view of the definitional sections is that they add little or nothing to the concept of employee for any purpose except counting to three to establish that the employee is in the service of an employer subject to the Workmen's Compensation Act. From this it might be concluded that it was intended that any employee of the employer, however remote from the production process and whatever his relation to it or to the injury, was to be exempted from suit for damages by an employee with a compensable claim for the injury. Nonetheless, it is clear that a physician-employee would not be counted as an employee for coverage purposes. Therefore, whether he should be counted as an employee under the same definitions *for immunization* is problematical and ambiguous. At least this is so on motion for summary judgment because the granting of summary judgment assumes there is no issue of material fact.

therefore more distinct; but we cannot ignore the definitions. It follows that we must look elsewhere to clarify legislative intention.

## VI.

In determining legislative intent some illumination is provided by examining the consequence of extension of the immunity to physician-employees in the position of the individual defendants in this case.[13] One result is the total shielding from successful suit for their alleged medical malpractice on an injured workman with a compensable claim. To justify any such result requires the conclusion that the legislative program in granting immunity to co-workers of the injured workman included as an objective the partial immunizing of medical malpractice from response in tort simply because the offending physician happened to be on the payroll of the employer. And this conclusion would necessarily follow even though the physician performed no work as a "workman" or "operative" regularly in the "same business" or in or about the "same establishment" and had no direct or active role "in or about a mine, factory or other establishment" in the productive process and performed no regular "manual labor" either as a "workman" or an "operative."

If the possibility is granted that the legislative intent could be as just outlined, it certainly is not clearly expressed and seems at war with the obvious objectives of the Workmen's Compensation Act.

Reading the workmen's compensation statute as a whole to resolve the ambiguities it is impossible to draw from it any legislative design to immunize medical malpractice or to interfere with the normal physician-patient relationship in any way. A specific section of the legislation buttresses this conclusion.

That section is R. C. 4123.651. It is significant that it

---

[13]Cf. *Woodmansee* v. *Cockerill* (1961), 115 Ohio App. 409, 414, 185 N. E. 2d 439, 442, where it is said that "In determining whether an ambiguous statutory provision is intended to be mandatory or directory, it is sometimes proper to take into consideration the consequences which would result from construing it one way or another."

permits an employee with a compensable injury to choose his physician. He may elect to be treated by the employer's doctor or he may elect to put his treatment and program for physical recovery in the hands of a private physician. Surely, the accident of choice cannot have been intended to shield one but not the other. Moreover, such a result would tend to defeat the legislative purpose to allow a choice between house physicians and private doctors. Indeed it is a rash act for an injured employee to choose a house doctor if his malpractice is immunized while the private physician's is not. Nevertheless, reading "employee" in isolation would achieve that result because the private physician chosen would not be an "employee."

It is clear that a medical doctor who also happens to be an employee of the employer occupies a dual status. On the one hand, he is an employee, on the other he is a physician. The crucial status in our view is that of physician. It would torture legislative intention evidenced in the plain objective of the statute, if not the plain words, to let the simple rubric of "employee" insulate a physician from the consequences of his malpractice in treating a patient only because the physician and patient happened to be on the payroll of the same employer.

## VII.

We conclude that a physician on the employer's payroll is not an "employee" as defined in R. C. 4123.01(B) and therefore not an employee within the meaning of the immunity section of the Workmen's Compensation Act.[14] The reason is that the dispositive status in this case is that of a medical doctor treating a patient. We find no occasion in logic or justice or legislative intendment for exempting the house physician from malpractice standards if it should be proven that negligent medical practice injured the patient. To hold otherwise, would fly in the face of public policy disapproving malpractice, obstruct the reach of the law toward those who practice the medical profession negligently, defeat the legislative judgment

[14]R. C. 4123.741, *supra.*

that the chance to choose a house physician is desirable, and distort the legislative objective which, in its immunity aspects, was clearly designed to protect no coworkers except those who were engaged in the productive or operating process in a direct relationship. Stated another way, we find it impossible to read the total workmen's compensation statute as in any way a legislative attempt to shield the negligent practice of medicine by company physicians while leaving the private physician treating a compensable injury responsible for his malpractice. The answer to question (1) is "Yes."

Reversed as to the individual defendants and remanded for further proceedings according to law. Affirmed as to the corporate defendant.

*Judgment accordingly.*

MANOS, P. J., and KRENZLER, J., concur.