ALBERTA BOYLE, PLAINTIFF-APPELLANT, v. CHARLES J.
BREME, DEFENDANT-RESPONDENT.

Argued March 21, 1983—Decided July 14, 1983.

*Joseph Asbell* argued the cause for appellant (*Joseph Asbell,*
attorney; *Yale I. Asbell,* on the briefs).

*John R. Gercke,* Asst. County Counsel, argued the cause for
respondent (*Steven D. Weinstein,* Camden County Counsel, at-
torney).

PER CURIAM.

We affirm for the reasons stated by Judge Fritz in his opinion below. 187 *N.J.Super.* 129 (App.Div.1982). We note that when the Legislature added a provision for co-employee immunity to the Workers' Compensation Act in 1961, *L.*1961, *c.* 2 (codified at *N.J.S.A.* 34:15–8), some employers had medical clinics staffed by employee doctors and nurses. If the Legislature had intended to exclude this class of co-employees, it could have expressed that intent. Indeed the Legislature made a comprehensive review of the Act in 1979, *L.*1979, *c.* 283, without modifying the co-employee immunity provision despite the pronouncement in *Bergen v. Miller,* 104 *N.J.Super.* 350 (App.Div.), certif. denied, 53 *N.J.* 582 (1969), of the principle enunciated in this case. The employee's recovery under the Act includes, of course, the consequences of malpractice, the injuries being deemed to arise out of and in the course of employment. *Flanagan v. Charles E. Green & Son,* 122 *N.J.L.* 424 (E. & A. 1939).

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, POLLOCK, O'HERN and GARIBALDI—6.

*For reversal*—Judge HANDLER—1.

HANDLER, J., dissenting.

By affirming the judgment in this case on the reasoning of the opinion below, this Court endorses a very literal and strict interpretation of the coemployee immunity provision of the workers' compensation statute, *N.J.S.A.* 34:15–8,[1] and thereby denies an employee the right to maintain a cause of action for

---

[1] *N.J.S.A.* 34:15–8 provides in pertinent part:

If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong. Amended by L.1961, c. 2, p. 14, § 1; L.1979, c. 283, § 2, eff. Jan. 19, 1980.

medical malpractice against a physician who happens to be employed by the same employer and whose professional activities and responsibilities are wholly unrelated to those of the injured employee. Because I do not believe that the coemployee immunity statute should be understood to bar appellant from maintaining a cause of action for medical malpractice against such a physician, I dissent.

Appellant Alberta Boyle was employed as a Food Service Worker at Camden County's Psychiatric Hospital in Lakeland. On May 12, 1980 she slipped and fell in the dining room of the facility and sustained injuries to her left side. Immediately after her fall, appellant was taken to the Camden County Health Services Center and treated in the medical clinic ("the dispensary") by respondent Charles Breme. Breme, a physician licensed to practice medicine in New Jersey, was employed by Camden County as the Director of Emergency Medical Services of the Camden County Health Services Center and was charged with running the dispensary at the Lakeland Complex.[2]

After the accident appellant filed a claim for workers' compensation benefits against Camden County. She also commenced an action against defendant for injuries caused by respondent's medical malpractice. The trial court granted respondent's motion for summary judgment, ruling that the coemployee immunity provision of *N.J.S.A.* 34:15–8 barred the claim because both parties worked for the same employer. Relying on *Bergen v. Miller,* 104 *N.J.Super.* 350 (App.Div.), certif. den., 53 *N.J.* 582 (1969), the Appellate Division affirmed. *Boyle v. Breme,* 187 *N.J.Super.* 129 (App.Div.1982). Although acknowledging sound policy arguments for finding an exception to *N.J.S.A.* 34:15–8 where a claim of medical malpractice is made,

---

[2]This facility was established early in 1980 following a decision by Camden County to self-insure against all employee compensation claims. The clinic was designed to treat employees' work-related injuries in a building at the Lakeland Complex and thereby to administer the employee compensation plan in a more cost effective manner.

the Appellate Division refused to "threaten the integrity of [the workers' compensation] scheme by presuming an exception in the case of a coemployee who happens to be a doctor." *Id.* at 132. It was "convinced that any adjustment . . . should be left to the Legislature." *Id.* at 133.

The critical question in this case is whether the coemployee immunity provision of *N.J.S.A.* 34:15–8 of the Workers Compensation Act is to be understood as immunizing a company doctor from liability for negligent acts performed in the course of his professional, medical treatment of a coemployee.

In 1961 the Legislature added a provision for coemployee immunity to the Workers' Compensation Act, *L.*1961, *c.* 2, which "expressly . . . preclude[d] a right of recovery on account of a compensable injury or death at common law or otherwise against a fellow employee except in cases of intentional wrong." *Miller v. Muscarelle,* 67 *N.J.Super.* 305, 321 (App.Div.1961). It thus abolished "cause[s] of action in tort against a fellow employee . . . [that] ha[d] frequently resulted in burdening the employer indirectly with common law damages superimposed upon his workmen's compensation liability by reason of either a legal, moral or practical obligation to indemnify the sued . . . employee." *Ibid.* This amendment brought coemployee relationships into concert with a general purpose underlying workers compensation, that is, to afford expeditious and certain redress to injured employees in return for the imposition of an absolute, but limited, liability upon their employers. *Boyle v. G. & K. Trucking Co.,* 37 *N.J.* 104, 112 (1962); *see also Seltzer v. Isaacson,* 147 *N.J.Super.* 308, 313 (App.Div.1977).

By shifting liability for employee negligence from the employee to his employer, the statute implicitly acknowledges the application of the common law doctrine of "respondent superior," namely, that the employer or master is liable for the actions of its employees or servants undertaken in the course of their employment. *Di Cosala v. Kay,* 91 *N.J.* 159 (1982); *Klitch v. Betts,* 89 *N.J.L.* 348 (E. & A. 1916); *Snell v. Murray,* 117

*N.J.Super.* 268 (Law Div.1971), aff'd, 121 *N.J.Super.* 215 (App. Div.1972). That doctrine imposes ultimate liability on the master who directs, controls and supervises its servants. *Starego v. Soboliski,* 11 *N.J.* 29, 34 (1952), *cert.* den., 345 *U.S.* 925, 73 *S.Ct.* 784, 97 *L.Ed.* 1356 (1953); *see Vreeland v. Wilkinson Gaddis & Co.,* 129 *N.J.L.* 283, 284 (Sup.Ct.1942); W. Prosser, *Law of Torts,* 460–61 (4th ed. 1971).

The relationship between an employer and a company physician differs substantially from other employer-employee relationships to which the doctrine of master/servant would apply. Rather than directing and supervising the doctor's work, the employer lacks control over the medical, patient-treating aspects of its house physician's work. In fact the treating physician is an independent, skilled professional. As Justice Francis observed in *Newmark v. Gimbel's, Inc.,* 54 *N.J.* 585 (1969):

> The doctor ... exercises his best judgment in diagnosing the patient's ailment or disability, prescribing and sometimes furnishing medicines or other methods of treatment which he believes, and in some measure hopes, will relieve or cure the condition. His performance is not mechanical or routine because each patient requires individual study and formulation of an informed judgment as to the physical or mental disability or condition presented, and the course of treatment needed.... In a primary sense [doctors] furnish services in the form of an opinion of the patient's condition based upon their experienced analysis of the objective and subjective complaints, and in the form of recommended and, at times, personally administered medicines and treatment. Compare, *Gagne v. Bertran,* 43 *Cal.*2d 481, 275 *P.*2d 15 (1954). Practitioners of such callings, licensed by the State to practice after years of study and preparation, must be deemed to have a special and essential role in our society, that of studying our physical and mental ills and ways to alleviate or cure them, and that of applying their knowledge, empirical judgment and skill in an effort to diagnose and then to relieve or to cure the ailment of a particular patient. [*Id.* at 596–97]

Recently, Justice Pollock, writing for a majority of this Court in *Pierce v. Ortho Pharmaceutical Corp.,* 84 *N.J.* 58 (1980), discussed the independence ascribed to professionals.

> Employees who are professionals owe a special duty to abide not only by federal and state law, but also by the recognized codes of ethics of their professions. That duty may oblige them to decline to perform acts required by their employers. [*Id.* at 71]

Justice Pollock's opinion clearly indicated that the independence of the medical profession and the duties that its members owe

the public could not be overriden by an employer directive that contravened public policy and conflicted with established medical practice. *Id.* at 72.[3]

Because of the lack of control exerted by the employer over the medical and patient-treating aspects of a house physician's work, the independence ascribed to the medical profession, and the degree of skill, care and judgment associated with the practice of medicine, the house physician, when treating other employees, cannot be viewed simply as a servant in a master-servant relationship. Dr. Breme treated Boyle in the capacity of physician and consequently, should be liable, as any other private doctor would be, for his malpractice because the doctor-patient relationship entails obligations, rights and duties entirely distinct from those associated with his status as a coemployee.[4]

I would ascribe to a company physician a dual capacity and therefore determine that he can be held independently liable for medical malpractice in a third party action by an injured employee. *Cf. Lyon v. Barrett,* 89 *N.J.* 294, 298 (1982) (discussing dual capacity doctrine as it applies to an employee-employer

---

[3]Justice Pashman agreed with the rest of the Court that professionals owe independent legal and ethical obligations to members of the public that cannot be superseded by an employer's directive that is contrary to public policy. However, he dissented from the Court's application of its newly announced principle on a motion for summary judgment. *Pierce v. Ortho Pharmaceutical Corp.,* 84 *N.J.* 58, 76 (1980) (Pashman, J., dissenting). He noted "four 'codes of professional ethics' [that] establish [independent] standards for the participation of doctors in clinical experimentation on humans," and found that "each [code was a] 'clear mandate of public policy' [and] provides the basis for denying defendant summary judgment." *Id.* at 80.

[4]Some of the special obligations of a doctor are mentioned in Justice Francis' discussion in *Newmark v. Gimbels Inc.,* 54 *N.J.* 585 (1969), *ante* at 573. The standard of care owed by a doctor to a patient may differ from the standard of care normally attendant upon coemployees. The relationship may impose certain fiduciary obligations and restrictions upon the treating physician by virtue of the position that he occupies with respect to the patient. *See generally* 61 *Am.Jur.*2d Physicians, Surgeons, Etc. §§ 158–173, pp. 290–305, §§ 200–301, p. 332–448 (1981).

relationship).[5] This result promotes a sound public policy and accords with the objectives underlying workers' compensation legislation. The Colorado Supreme Court's recent discussion in *Wright v. District Ct. In and For Cty. of Jefferson,* 661 *P.*2d 1167 (Colo.1983), is particularly instructive:

> A rule exposing a physician to liability for malpractice committed while acting as a company doctor is not inconsistent with either the policies underlying the Workmen's Compensation Act or its general rule of co-employee immunity. The worker's compensation scheme is based upon a mutual compromise of common law rights by employers and workers: when an industrial accident occurs, the employer accepts liability without proof of fault and the worker surrenders potential causes of action in tort for a more limited schedule of benefits. While most workplace accidents have certain characteristics which justify tort immunity for employers and co-employees, these characteristics are not present when the tortfeasor is a company doctor. Five salient distinctions are discussed at

[5] I acknowledge, as the Appellate Division did, that the question of whether to apply the dual capacity doctrine to a company physician in the face of a coemployee immunity statute has produced a variety of strong and conflicting views. For opinions ascribing a dual capacity see, for example, *Wright v. Dist. Ct. In & For Cty. of Jefferson,* 661 *P.*2d 1167 (Colo.1983); *Hoffman v. Rogers,* 22 *Cal.App.*3d 655, 99 *Cal.Rptr.* 455 (Cal.Ct.App.1972); *Ross v. Schubert,* 388 *N.E.*2d 623 (Ind.Ct.App.1979); *McCormick v. Caterpillar Tractor Co.,* 85 *Ill.*2d 352, 53 *Ill.Dec.* 207, 211, 423 *N.E.*2d 876, 880 (Ill.1981) (Simon, J., dissenting); *Jenkins v. Sabourin,* 104 *Wis.*2d 309, 311 *N.W.*2d 600, 607 (Wis.1981) (Abrahamson, J., dissenting); *Proctor v. Ford Motor Co.,* 32 *Ohio App.*2d 165, 289 *N.E.*2d 366 (Ohio Ct.App.1972), rev'd in part, *Proctor v. Ford Motor Co.,* 36 *Ohio St.*2d 3, 302 *N.E.*2d 580 (Ohio 1973). For opinions refusing to find a dual capacity see, for example, *McCormick v. Caterpillar Tractor Co.,* 85 *Ill.*2d 352, 53 *Ill.Dec.* 207, 423 *N.E.*2d 876 (Ill.1981); *Jenkins v. Sabourin,* 104 *Wis.*2d 309, 311 *N.W.*2d 600 (Wis.1981); *Wright v. Dist. Ct., supra,* 661 *P.*2d at 1172 (Hodges, C.J., dissenting); *Proctor v. Ford Motor Co.,* 302 *N.E.*2d 580, 36 *Ohio St.*2d 3 (Ohio 1973). For further discussion see generally Note, *The No Duty Rule in New York: Should Company Doctors Be Considered Co-Employees?,* 9 *Hofstra L.Rev.* 665 (1981); Note, *The Malpractice liability of Company Physicians,* 53 *Ind.L.J.* 585 (1978); Note, *Workmen's Compensation and Employer Liability: The Dual Capacity Doctrine,* 5 *St. Mary's L.J.* 818 (1974).

A leading treatise writer's new and more restricted formulation of the "dual capacity" doctrine provides that a defendant is liable only if he "possesses a second persona so completely independent from and unrelated to his [other] status . . . that by established standards the law recognizes it as a separate legal person." 2A Larson, *The Law of Workmen's Compensation* § 72.81, p. 14–229 (1982).

length in Jenkins, *The No-Duty Rule in New York: Should Company Doctors Be Considered Co-employees?*, 9 Hofstra L.R. 665, 675–680 (1981), and support the adoption of the dual capacity approach.

First, the worker's compensation scheme is based on the fact that most workplace accidents occur without fault or in a manner making assignment of fault nearly impossible. This assumption is not relevant to injuries resulting from medical malpractice, which occurs away from the production area, is easier to identify, and can be judged in light of ascertainable medical standards.

Second, co-employee immunity embodies a recognition that workplace accidents are less a result of unreasonable conduct than a concomitant of a highly technological age. Unlike the occupational accidents which are an inevitable consequence of working with complex equipment, medical malpractice is neither inevitable nor a risk that is inherent in the production process.

Third, worker's compensation is based in part on the premise that the employer is in a better position than a co-employee to shoulder the risk of an industrial accident. But the higher income and professional liability insurance coverage of company physicians set them apart from the average co-employee.

Fourth, a company physician does not participate in the mutual compromise of rights which is the essence of the worker's compensation scheme. Because the doctor is removed from the production area, he or she is extremely unlikely to be injured on the job. Thus, realistically, the doctor is not sacrificing a common law right to sue in exchange for co-employee immunity.

Fifth, the worker's compensation law provides employers with an economic incentive to deter future accidents by careful job training, supervision, and organization of the workplace. But because a company lacks significant control over the professional acts and exercise of judgment by a company physician, extending co-employee immunity to the physician carries little deterrent effect against the company. Most importantly, co-employee immunity removes almost all deterrence to negligence by the company physician, who, alone among doctors, would be invulnerable to malpractice actions.

Thus, leaving company physicians open to negligence suits satisfies the compensatory purposes of worker's compensation without frustrating the basic principle of a mutual compromise of rights. The dual capacity approach leaves the employer liable under worker's compensation for injuries which the employee is exposed to by employment in the industry—injuries which arise out of a risk or hazard to which the employee is exposed in the performance of the job. "It is only these risks which the legislature intended to be covered by the worker's compensation act." *Jenkins v. Sabourin, supra,* 311 N.W.2d at 613 (Abrahamson, J., dissenting). [661 P.2d 1170–71]

Respondent's treatment of only employees of Camden County at the County's facility and not members of the general public at a private office in no way detracts from his separate and distinctive status as a doctor.

... It is not the *public* practice of medicine which creates a dual capacity for the attending physician; it is the very practice of medicine, with its special duties and responsibilities, which charges a doctor with all of the obligations which normally arise in the doctor-patient relationship. One's need for protection from medical malpractice is not affected by the configuration of the employment relationship or the location of treatment. [*Wright, supra,* 661 *P.*2d at 1170 (Emphasis in original)]

*See also Lyon v. Barrett, supra,* 89 *N.J.* at 299 ("dual capacity may exist when an employer who is a physician commits malpractice while rendering treatment to an employee injured on the job.") Rather, as noted, holding respondent amenable to suit for malpractice enhances care in the health services field by deterring negligent conduct on the part of company physicians.

I believe that in enacting the coemployee immunity provision of workers' compensation laws, the Legislature did not contemplate that a physician, such as Dr. Breme, was a fellow employee of patients whom he was medically treating. This result—excluding the licensed treating physician from coemployee immunity—does not unduly broaden the dual capacity doctrine or disserve the legislative purpose in furnishing such an immunity. Medical malpractice is not an inherent or normal risk of the business and employment of such an entity as Camden County. *N.J.S.A.* 34:15–8 was intended to cover accidental injuries arising out of and in the course of employment—the kinds of injuries that involve employment risks that are commonly and most frequently associated with an employer's enterprise. In light of the unique stature of the medical profession and the professional obligations that devolve upon licensed physicians, which transcend any duties that may be imposed by an employer, it is unreasonable to conclude that the Legislature, through its coemployee immunity provision, intended to abrogate or narrow the rights, duties and obligations that flow from the doctor-patient relationship.

Accordingly, I would reverse the determination of the Appellate Division.