754 A.2d 1168

DONALD HAWKSBY AND JOANNA HAWKSBY, HIS WIFE, PLAINTIFFS–APPELLANTS, v. JOSEPH A. DEPIETRO, M.D., DEFENDANT–RESPONDENT, AND WALTER URS, M.D., MATTHEW GARFINKEL, M.D., WILLIAM H. ROSS, D.O., METUCHEN ORTHOPAEDIC GROUP, JOHN DOE, M.D. 1–50, JANE DOE, M.D. 1–50, JOHN DOE, R.N. 1–50, JANE DOE, R.N. 1–50, JOHN DOE 1–50, JANE DOE 1–50 AND JOHN DOE CORP. 1–50, (FICTITIOUS NAMES), DEFENDANTS.

Argued November 29, 1999—Decided July 25, 2000.

*E. Drew Britcher,* argued the cause for appellants (*Leonard & Butler,* attorneys).

*Francis E. Borowsky, Jr.,* argued the cause for respondent (*Monte, Sachs & Borowsky,* attorneys; *Mr. Borowsky* and *Michelle A. Monte,* on the brief).

*Anthony C. Famulari,* submitted a brief on behalf of *amicus curiae* New York Times, Co. (*Carpenter, Bennett & Morrissey,* attorneys; *Jennifer L. Kapell,* on the brief).

*Christopher B. Leitner,* submitted a brief on behalf of *amicus curiae* Donald Hawksby as Workers' Compensation Petitioner (*Shebell & Shebell,* attorneys; *Raymond P. Shebell* of counsel).

The opinion of the Court was delivered by

COLEMAN, J.

This case revisits the issue of whether there should be tort liability for co-employee physicians. The question raised is whether a doctor who is also an employee of an injured worker's employer may be sued in the Law Division for medical malpractice for allegedly injuring that worker while providing authorized medical treatment for a compensable accident. The Law Division held that the action was precluded based upon immunity under the New Jersey Workers' Compensation Act (Act), *N.J.S.A.* 34:15–8,

and that the exclusive remedy was to pursue the claim in the Division of Workers' Compensation (Division). The Appellate Division affirmed in a published opinion. 319 *N.J.Super.* 89, 102, 724 *A.*2d 881 (1999).

■ We hold that whenever a worker is treated for a work-connected condition by an authorized doctor or nurse, who is also an employee of the injured worker's employer-owned and -operated health care facility, the injured worker's exclusive remedy for alleged malpractice is to pursue the claim in the Division.

## I.

The relevant facts are not disputed. Plaintiff Donald Hawksby (plaintiff) worked for some time prior to the date of his accident as a pressman for The New York Times Co. (The Times) at its Edison, New Jersey plant. While performing his duties on December 13, 1993, plaintiff fell from a ladder causing injuries to his left elbow, left knee, and left leg extending from the back of the knee into the calf and thigh. The Times operates its own health-care facility that provided medical care to plaintiff. After initial minor treatment on the day of the accident by The Times nurse and an emergency room doctor, plaintiff consulted defendant Dr. Joseph DePietro on December 23, 1993. Dr. DePietro is the full-time director of The Times on-site clinic that treated plaintiff for approximately one year. All of the treatment rendered by Dr. DePietro was in his capacity as an employee of the clinic and The Times.

Dr. DePietro's treating diagnosis was probable slight strain of the hamstring muscle for which Advil, stretching exercises, and application of heat were prescribed. When the treatment plan did not resolve plaintiff's medical problems, which included persistent severe pain, plaintiff returned to the clinic on October 14, 1994, complaining of pain in the posterior left thigh. An X-ray and a magnetic resonance imaging test (MRI) were taken on October 26, 1994, and plaintiff was referred to an orthopedic oncologist because the MRI showed a solid lesion in plaintiff's left thigh.

Plaintiff was examined by Dr. John H. Healey, an orthopedic oncologist, at Memorial Sloan Kettering Cancer Center on November 15, 1994. He performed an open biopsy of a mass on plaintiff's left calf on November 16, 1994. A large grade sarcoma of the left calf was diagnosed. Plaintiff received chemotherapy and radiation therapy from Sloan Kettering until at least April 1995. The record does not reveal plaintiff's medical condition and treatment since that time.

On January 25, 1995, plaintiff filed a verified petition with the Division against The Times for the December 3, 1993 accident. While that claim was still pending in the Division, plaintiff filed the present action in the Law Division on November 14, 1995, alleging medical malpractice against Dr. DePietro and other medical professionals. The Appellate Division has accurately summarized most of the remaining relevant procedural history:

> In October 1996, the trial court granted Dr. DePietro's motion for summary judgment on the ground that Dr. DePietro, being a fellow employee, was immune from a tort action under *N.J.S.A.* 34:15-8. The trial court denied plaintiff's request that the matter be placed on the inactive list pending the workers' compensation matter. The summary judgment order was interlocutory because the medical malpractice action continued against other medical professionals. This court denied plaintiff's motion for leave to file an appeal from the summary judgment.
>
> The workers' compensation claim was disposed of on May 22, 1997 by entry of an order approving settlement. *See N.J.S.A.* 34:15-20. The order awarded Hawksby "10% of the left leg for residuals of a hamstring pull." It also stated that "[t]he spindle cell sarcoma is not causally related to the petitioner's employment or the accident of 12/13/93."
>
> On July 23, 1997, plaintiff moved in the medical malpractice action, under *R.* 4:50-1, to set aside the summary judgment. The court denied this motion on October 24, 1997. That order was also interlocutory because the medical malpractice case had not been disposed of as to all parties. However, a stipulation of dismissal with regard to defendant, William H. Ross, M.D., the last party in the case, was filed on November 6, 1997. Plaintiff filed his timely notice of appeal on December 3, 1997, appealing from the October 24, 1997 order denying the motion to vacate the summary judgment entered on September 18, 1996.
>
> [*Hawksby, supra,* 319 *N.J.Super.* at 91, 724 *A.*2d 881].

With few exceptions, we agree with the Appellate Division's legal analysis that led it to hold that "Hawksby may not maintain a tort action against Dr. DePietro based on his failure to diagnose the cancer during his treatment of Hawksby's compensable inju-

ry." *Id.* at 102, 724 *A.*2d 881. The Appellate Division examined cases from around the country and concluded that "[t]he majority of the courts which have addressed this issue have concluded, as New Jersey has, that an injured employee may not maintain a malpractice action against a co-employee physician for the negligent aggravation of his or her existing injury." *Id.* at 93–94, 724 *A.*2d 881.

Hawksby filed his petition for certification on March 26, 1999. While that petition was pending, on April 4, 1999, he filed an application for review or modification, pursuant to *N.J.S.A.* 34:15–27, of his ten percent disability award for the left leg injury. That claim is still pending in the Division. We granted certification on May 26, 1999. 160 *N.J.* 479, 734 *A.*2d 794 (1999).

## II.

Plaintiff argues that his malpractice claim should not have been dismissed because the cancer in his leg was non-work related, and was instead the result of a disease process that was unrelated to the workplace. He also contends that Dr. DePietro's failure to timely diagnose the tumor was independent of his employment status as the physician authorized by The Times to treat employees for work-related conditions. He argues further, that he has been placed in the untenable position of having The Times contend in the Division that the cancer is not compensable, and having Dr. DePietro contend in the Law Division that immunity under *N.J.S.A.* 34:15–8 requires dismissal of the tort action.

Dr. DePietro argues that plaintiff's predicament, of having the claim of alleged failure to make an early cancer diagnosis found to be non-compensable in the Division based on a stipulation, not the result of a litigated trial, and the dismissal of the tort claim in the Law Division based on the fellow-employee immunity under *N.J.S.A.* 34:15–8, is simply the result of plaintiff's litigation strategy. In other words, Dr. DePietro contends that plaintiff settled his case in the Division in an effort to obtain a more lucrative award or settlement in the tort action. He continues to maintain

that the exclusive forum was the Division, where plaintiff should have proceeded on the theory that Dr. DePietro had aggravated a preexisting cancer and that a tort action is barred by the exclusive remedy rule, *N.J.S.A.* 34:15–8.

## A.

The procedural posture in this case is strikingly similar to that involved in a case we decided two terms ago. As we observed there: "This is a workers' compensation case in which the parties have taken reverse factual and legal positions. The injured worker ... is denying that an accident arose out of and in the course of employment ... in order to escape the exclusive remedy rule of the New Jersey Workers' Compensation Act ... while the employer is admitting the compensability of that accident." *Kristiansen v. Morgan*, 153 *N.J.* 298, 301–02, 708 *A.*2d 1173 (1998). Here, plaintiff is asserting that aggravation of his cancer is not compensable to escape the co-employee immunity rule that provides:

If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

[*N.J.S.A.* 34:15–8].

With *Kristiansen* fresh in our minds, following oral argument, we requested each counsel who had handled the case in the Division "to submit a brief to the Court on the availability of Workers' Compensation on the ground that [Dr. DePietro's] failure to diagnose was an 'accident' within the intendment of [*N.J.S.A.* 34:15–7]." In response to that request, counsel for The Times conceded that no distinction should be made between a claim that an authorized treating physician has aggravated a work-related injury and that an aggravation of a non-work related condition was caused by that physician. Counsel reasons that in both instances, treatment would be administered by an authorized treating physician for compensable conditions and but for the injured employee's employment, the worker would not have been

injured on the job and would not have been treated by the employer's authorized doctor, here Dr. DePietro. Counsel for the employer further concedes that plaintiff's claim of aggravation of his cancer, based on alleged professional malpractice under the workers' compensation no-fault system, is to be treated as an accident that arose out of and in the course of employment within the meaning of *N.J.S.A.* 34:15–7, without the necessity of proving negligence.

Those concessions would be controlling in a case in which the worker was claiming that professional negligence aggravated the compensable injury being treated. Here, however, the worker is claiming that Dr. DePietro failed to diagnose cancer in the leg he was treating for a probable hamstring muscle strain. Under these circumstances, to establish compensability based on Dr. DePietro's alleged failure to diagnose the non-compensable cancer, the worker must prove professional negligence. *Walck v. Johns– Manville Products Corp.*, 56 *N.J.* 533, 560–62, 267 *A.*2d 508 (1970). "[T]he doctor's malpractice would be an incident of the employment." *Id.* at 562, 267 *A.*2d 508. We recognize that "our analysis makes compensation depend on proof of fault, in the face of the statute's direction that compensation be awarded or withheld 'without regard to the negligence of the employer.' R.S. 34:15– 7.... But the fact is that in the circumstances of this case it is only the alleged negligence that makes the" aggravation compensable. *Dudley v. Victor Lynn Lines, Inc.*, 32 *N.J.* 479, 495, 161 *A.*2d 479 (1960).

Both *Walck, supra,* and *Dudley, supra,* involved claims of professional negligence that had to be prosecuted in the Division. The Judges of Compensation are at least as capable, if not more capable, of handling such claims as juries. Indeed, Florida and Virginia have adopted a workers' compensation approach for handling some of the more serious and complicated common-law medical malpractice claims. *Fla. Stat. Ann.* § 766.303 (West 1999) (dealing with birth-related neurological injury claims); ·*Va. Code Ann.* § 38.2–5002 (Michie 1999) (same); *see also* Randall R.

Bovbjerg & Frank A. Sloan, *No–Fault for Medical Injury: Theory and Evidence*, 67 *U. Cin. L.Rev.* 53, 83 (1998) (discussing Florida and Virginia statutes); Practicing Law Institute, *Medical Malpractice Developments* 576 (1994) (same). *See generally* Randall R. Bovbjerg, et al., *Administrative Performance of "No–Fault" Compensation for Medical Injury*, 60 *Law & Contemp. Probs.* 71, 72 (1997) ("The first actual implementation of no-fault for medical liability occurred ... in Virginia and Florida, largely under the workers' compensation model.").

■ We reject plaintiff's contention that a company doctor in a medical facility that is owned and operated by the injured worker's employer acts in a dual capacity of co-employee and physician and, therefore, owes plaintiff an independent duty of care, the breach of which should permit him to pursue a tort action. This same contention has already been soundly rejected by this Court. What we said then is dispositive of the issue presented now:

> We note that when the Legislature added a provision for co-employee immunity to the Workers' Compensation Act in 1961, *L.* 1961, *c.* 2 (codified at *N.J.S.A.* 34:15-8), some employers had medical clinics staffed by employee doctors and nurses. If the Legislature had intended to exclude this class of co-employees, it could have expressed that intent. Indeed the Legislature made a comprehensive review of the Act in 1979, *L.* 1979, *c.* 283, without modifying the co-employee immunity provision despite the pronouncement in *Bergen v. Miller*, 104 *N.J.Super.* 350 [250 *A.2d* 49] (App.Div.), *certif. denied*, 53 *N.J.* 582 [252 *A.2d* 158] (1969), of the principle enunciated in this case. The employee's recovery under the Act includes, of course, the consequences of malpractice, the injuries being deemed to arise out of and in the course of employment. *Flanagan v. Charles E. Green & Son*, 122 *N.J.L.* 424 [5 *A.2d* 742] (E. & A.1939).
>
> [*Boyle v. Breme*, 93 *N.J.* 569, 570, 461 *A.2d* 1164 (1983) ].

We agree with the Appellate Division that the majority of jurisdictions that have addressed the issue align with the New Jersey rule that an injured worker may not maintain a malpractice action against a co-employee physician. *Hawksby, supra*, 319 *N.J.Super.* at 93–101, 724 *A.2d* 881. A contrary holding would result "in burdening the employer indirectly with common-law damages superimposed upon [its] workmen's compensation liability by reason of either a legal, moral or practical obligation to indemnify the sued [doctor], director, officer or supervisory em-

ployee, or with the expense of carrying insurance to cover the personal liability of such ... personnel." *Miller v. Muscarelle*, 67 *N.J.Super.* 305, 321, 170 *A.2d* 437 (App.Div.), *certif. denied*, 36 *N.J.* 140, 174 *A.2d* 925 (1961). These are some of the specific concerns *N.J.S.A.* 34:15–8 was intended to eliminate.

### III.

■ We recognize that no one has appealed from the order approving settlement in the Division. *Hawksby, supra,* 319 *N.J.Super.* at 91, n. 1, 724 *A.2d* 881. Because our ultimate disposition is to affirm the dismissal of the tort claim, we think it only fair to afford plaintiff a chance to litigate the claim of aggravation of his cancer in the Division, in light of the employer's concessions and our conclusion that the alleged malpractice constitutes an accident under *N.J.S.A.* 34:15–7. The issue of medical malpractice has yet to be litigated between these parties.

■ Under the Act, there are two types of orders approving settlement. One is pursuant to *N.J.S.A.* 34:15–20, and operates as a "dismissal of the claim petition." *Ibid.* The other is pursuant to *N.J.S.A.* 34:15–58, and has the same operative effect as a litigated judgment in that it is final and conclusive between the parties and may be appealed pursuant to *N.J.S.A.* 34:15–66 and/or reopened in accordance with *N.J.S.A.* 34:15–27. The order approving settlement in the present case involved both *N.J.S.A.* 34:15–20 and –58. That part of the order providing that "[t]he spindle cell sarcoma is not causally related to the petitioner's employment or the accident of 12/13/93" falls under *N.J.S.A.* 34:15–20. By that stipulation, the parties intended to have the aggravation claim dismissed in the Division because that claim was being pursued in the tort action. That portion of the settlement that awarded ten percent partial permanent disability of the left leg was entered pursuant to *N.J.S.A.* 34:15–58. That aspect of the award has been reopened and is currently pending in the Division. We exercise original jurisdiction, *Rule* 2:10–5; *Karins v. City of Atlantic City,* 152 *N.J.* 532, 541, 706 *A.2d* 706 (1998), and vacate the dismissal of the

aggravation claim in the order approving settlement because it is in the public's interest to get this litigation back on track. *See Estelle v. Board of Educ.*, 14 *N.J.* 256, 260–61, 102 *A.*2d 44 (1954). In the future, however, such a disposition pursuant to *N.J.S.A.* 34:15–20 shall effectively preclude litigating the issue in either the Division or the Law Division.

## IV.

We affirm the judgment of the Appellate Division dismissing the tort action. We remand the matter to the Division, which has exclusive jurisdiction, for further proceedings in accordance with this opinion.

STEIN, J., dissenting.

The Court holds that plaintiff must pursue a medical malpractice claim in the Division of Workers' Compensation (Division) because the doctor who committed the alleged malpractice was provided by the employer. The Court affirms the lower courts' holding immunizing plaintiff's doctor from tort liability pursuant to *N.J.S.A.* 34:15–8 on the basis that the doctor was a fellow employee. That holding insulates company doctors from tort liability for negligent conduct, thereby depriving employees harmed by their negligence of an adequate forum to redress their injuries. I disagree and would adopt the dual capacity doctrine relied on by Justice Handler in *Boyle v. Breme,* 93 *N.J.* 569, 570–77, 461 *A.*2d 1164 (1983) (Handler, J., dissenting), and permit injured plaintiffs to assert medical malpractice claims against a co-employee company doctor.

Moreover, in my view the Division is not the appropriate forum to litigate complex issues of medical causation. Plaintiff's claim should be litigated in the Law Division, the customary forum for the trial of medical malpractice claims.

I

A

The Workers' Compensation Act (the Act) was enacted to insure that employees who are injured during the course of employment are compensated for their losses without having to prove the fault of the employer. *Harris v. Branin Transp., Inc.*, 312 *N.J.Super.* 38, 46, 711 *A.*2d 331 (App.Div.), *certif. denied*, 156 *N.J.* 408, 719 *A.*2d 640 (1998). We have discussed previously the development of the Act and the purpose of workers' compensation legislation. *Millison v. E.I. du Pont de Nemours & Co.*, 101 *N.J.* 161, 173–76, 501 *A.*2d 505 (1985). The Act "involve[s] a historic trade-off whereby employees relinquished their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffered injuries by accident arising out of and in the course of employment." *Id.* at 174, 501 *A.*2d 505. Thus, a balanced no-fault system was enacted where "employees would receive assurance of relatively swift and certain compensation payments, but would relinquish their rights to pursue a potentially larger recovery in a common-law action." *Ibid.*

In 1961, the Legislature amended the Act to provide for co-employee immunity. *L.* 1961, *c.* 2. *N.J.S.A.* 34:15–8, as amended, provides fellow employees with immunity from tort liability for their own negligent acts in the workplace. *Volb v. G.E. Capital Corp.*, 139 *N.J.* 110, 117, 651 *A.*2d 1002 (1995); *Wellenheider v. Rader*, 49 *N.J.* 1, 9, 227 *A.*2d 329 (1967). The purpose of that amendment was to relieve employers from the burden of paying

> common-law damages superimposed upon [their] workmen's compensation liability by reason of either a legal, moral or practical obligation to indemnify [a] sued director, officer or supervisory employee, [and] the expense of carrying insurance to cover the personal liability of such supervisory personnel.
>
> [*Miller v. Muscarelle*, 67 *N.J.Super.* 305, 321, 170 *A.*2d 437 (App.Div.), *certif. denied*, 36 *N.J.* 140, 174 *A.*2d 925 (1961).]

*See also Maggio v. Migliaccio*, 266 *N.J.Super.* 111, 116, 628 *A.*2d 814 (App.Div.1993) (noting that *N.J.S.A.* 34:15–8 defense applies where plaintiff's employer provides workers' compensation bene-

fits and would be responsible for plaintiff's injuries). Professor Larson notes that pursuant to workers' compensation laws an employer "gives up its normal defenses and assumes automatic liability" in exchange for immunity from employee common-law suits, and that that reasoning can be extended to a co-employee who is "entitled to expect in return for what he or she has given up ... freedom from common-law suits based on industrial accidents in which that co-employee is at fault." 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 111.03[2] (2000). *N.J.S.A.* 34:15–8 thus protects fellow employees from common-law tort actions filed by workers who are injured or killed in the workplace. *Volb, supra,* 139 *N.J.* at 117, 651 *A.*2d 1002; *Wellenheider, supra,* 49 *N.J.* at 9, 227 *A.*2d 329; *Estrada v. Hendricksaw Corp.,* 302 *N.J.Super.* 262, 266, 695 *A.*2d 323 (App. Div.1997); *Bustamante v. Tuliano,* 248 *N.J.Super.* 492, 494, 591 *A.*2d 694 (App.Div.), *certif. denied,* 126 *N.J.* 385, 599 *A.*2d 162 (1991).

## B

Because of the unique service provided by company doctors, some courts, although a distinct minority, wisely have declined to extend co-employee immunity to them and have adopted the dual capacity doctrine. Declaring that "[m]edical malpractice is not an inherent risk of the brewing business," in *Wright v. District Court,* 661 *P.*2d 1167, 1171 (1983), the Supreme Court of Colorado held that a brewery employee whose back injury was aggravated by the malpractice of a company doctor could maintain a malpractice claim against the company doctor because the doctor's relationship with the employee

> was identical to that of a doctor in private practice with a patient. This relationship is distinct from the employment relationship; it entails different rights and duties. Clearly, a private doctor would be liable to [the employee] for malpractice. There is no logical reason to treat company physicians differently. Thus, the rule which immunizes employees from suits by their co-employees for negligence within the course of employment is inapplicable here.
>
> [*Id.* at 1168.]

A similar result was reached by the Supreme Court of Georgia in *Davis v. Stover*, 258 *Ga.* 156, 366 *S.E.*2d 670 (1988). There, the court declined to extend co-employee immunity to company doctors, finding that workers' compensation laws were not intended to grant immunity for professional malpractice actions and stating that "a worker expects and trusts his treatment will be made by the doctor's independent professional judgment." *Id.* at 671.

The majority view of this Court has been that company doctors are entitled to co-employee immunity for their negligent treatment of employee-patients. See *Boyle, supra*, 93 *N.J.* at 570, 461 *A.*2d 1164. Justice Handler, however, has argued persuasively against extending co-employee immunity to company doctors. In *Boyle*, Justice Handler reviewed the purposes of workers' compensation laws and the implications of immunizing company doctors from liability as co-employees. 93 *N.J.* at 572–77, 461 *A.*2d 1164 (Handler, J., dissenting). He concluded that

[b]ecause of the lack of control exerted by the employer over the medical and patient-treating aspects of a house physician's work, the independence ascribed to the medical profession, and the degree of skill, care and judgment associated with the practice of medicine, the house physician, when treating other employees, cannot be viewed simply as a servant in a master-servant relationship.

[*Id.* at 574, 461 *A.*2d 1164.]

Regarding the legislative intent underlying *N.J.S.A.* 34:15–8, Justice Handler observed that

in enacting the co-employee immunity provision of workers' compensation laws, the Legislature did not contemplate that a physician ... was a fellow employee of patients whom he was medically treating. This result—excluding the licensed treating physician from co-employee immunity—does not unduly broaden the dual capacity doctrine or disserve the legislative purpose in furnishing such an immunity. Medical malpractice is not an inherent or normal risk of the business and employment of such an entity as [the defendant doctor's government employer]. *N.J.S.A.* 34:15–8 was intended to cover accidental injuries arising out of and in the course of employment—the kinds of injuries that involve employment risks that are commonly and most frequently associated with an employer's enterprise. In light of the unique stature of the medical profession and the professional obligations that devolve upon licensed physicians, which transcend any duties that may be imposed by an employer, it is unreasonable to conclude that the Legislature, through its co-employee immunity provision, intended to abrogate or narrow the rights, duties and obligations that flow from the doctor-patient relationship.

[*Id.* at 577, 461 *A.*2d 1164.]

In his concurring and dissenting opinion in *Millison, supra,* Justice Handler again challenged the application of *N.J.S.A.* 34:15–8 to immunize negligent company doctors:

> In enacting the 1961 amendments to *N.J.S.A.* 34:15–8 granting co-employees immunity for negligent acts, the Legislature did not express or effectuate an intention to include doctors within the scope of that privilege. Indeed, granting doctors "co-employee immunity" does not further the underlying purpose of the 1961 amendment, but does undermine New Jersey's public policy in deterring negligent conduct and fully compensating negligently-inflicted injuries. The "co-employee immunity" amendment was designed to abolish "cause[s] of action in tort against a fellow employee ... [that] ha[d] frequently resulted in burdening the employer indirectly with common law damages superimposed upon workmen's compensation liability by reason of either a legal, moral or practical obligation to indemnify the sued ... employee."

> [*Millison, supra,* 101 *N.J.* at 202, 501 *A.2d* 505 (Handler, J., concurring and dissenting) (quoting *Miller, supra,* 67 *N.J.Super.* at 321, 170 *A.2d* 437).]

In contrast to most employees whose workplace conduct implicates the responsibility of their employers, and who therefore are entitled to co-employee immunity, Justice Handler noted that employers ordinarily exert no control over the treatment rendered by company doctors:

> In this case of doctors employed by companies, the lack of employer control and direction, the medical profession's skill and distinct occupational personality, and the fact that medical services are not a product marketed by [the employer] militate strongly towards viewing doctors as independent contractors.

> Since employers would not be liable for the negligence of the doctors they employ, applying the co-employee immunity to company physicians does not comport with the underlying purpose of the 1961 amendments in protecting employers from double liability. No public policy is advanced by including doctors within *N.J.S.A.* 34:15–8's co-employee immunity. On the other hand, the *Boyle* rule perniciously allows company-employed physicians to operate undeterred at a level of performance beneath that which is expected of other members of the medical profession at the expense of workers' lives and limbs.

> [*Id.* at 203–04, 501 *A.2d* 505 (citations omitted).]

II

A

Plaintiff claims that Dr. DePietro "negligently failed to exercise the degree of care required by accepted standards of good medical practice" in failing to recognize the cancerous tumor in his left leg

during almost one year of treatment for continuous pain in that leg. In order to prove that medical malpractice claim, plaintiff must show that Dr. DePietro's failure to diagnose his cancer aggravated that condition and increased the risk of recurrence. We first identified the essential elements of that cause of action in *Evers v. Dollinger,* 95 *N.J.* 399, 471 *A.*2d 405 (1984).

In *Evers,* the defendant failed to diagnose breast cancer. During the ensuing months plaintiff experienced severe pain and detected an increase in the size of the cancerous tumor. *Id.* at 402–03, 471 *A.*2d 405. The Court acknowledged the existence of a cause of action finding that a "progressive evolution of the malignancy during the period of delay until plaintiff received proper medical attention, occasioned by defendant's earlier failed diagnosis, is a cognizable injury and constituted an actionable element of damages." *Id.* at 407, 471 *A.*2d 405. In addition to recognizing the growth and spread of the cancer as "an injury in and of itself," *id.* at 408, 471 *A.*2d 405, the Court found that "[a]n additional element of injury and damage derives from plaintiff's claims of anxiety, emotional anguish and mental distress." *Id.* at 409, 471 *A.*2d 405. The Court also adopted a more flexible standard of proof, concluding that

plaintiff should be permitted to demonstrate, within a reasonable degree of medical probability, that the seven months delay resulting from defendant's failure to have made an accurate diagnosis and to have rendered proper treatment increased the risk of recurrence or of distant spread of plaintiff's cancer, and that such increased risk was a substantial factor in producing the condition from which plaintiff currently suffers.

[*Id.* at 417, 471 *A.*2d 405.]

In *Evers,* the Court noted "that the difficulties of identifying, defining, and proving injury in certain types of medical malpractice cases justif[y] the application of a standard of causation that is more flexible than that used in conventional tort claims." *Id.* at 413, 471 *A.*2d 405. Because of the inherent difficulty of proving negligence when the plaintiff is afflicted with a preexisting condition, the Court has continued to apply a lower burden-of-proof standard for plaintiffs to establish a prima facie case of negligence in this increasingly complex area of law. *Gardner v. Pawliw,* 150

*N.J.* 359, 377, 696 *A.*2d 599 (1997) (involving prenatal medical malpractice); *Fischer v. Canario,* 143 *N.J.* 235, 241, 670 *A.*2d 516 (1996) (concerning tumor misdiagnosis); *Scafidi v. Seiler,* 119 *N.J.* 93, 108–09, 574 *A.*2d 398 (1990) (involving prenatal medical malpractice); *Dubak v. Burdette Tomlin Memorial Hosp.,* 233 *N.J.Super.* 441, 449, 559 *A.*2d 424 (App.Div.1989) (concerning fatal internal bleeding).

## B

The majority has determined that the Division is the exclusive forum in which plaintiff's claim should be tried. The Division, however, is a forum not well suited to the trial of a medical malpractice claim where an injured plaintiff must prove negligence in order to receive compensatory damages. The Division's customary function is to adjudicate causation in the context of no-fault claims. *See Brock v. Public Serv. Elec. & Gas Co.,* 325 *N.J.Super.* 582, 588, 740 *A.*2d 167 (App.Div.1999) (noting that workers' compensation court "was designed to establish a no fault system of compensation for workers who are injured or contract disease in the course of employment"). The Division's judges are unfamiliar with medical malpractice litigation and with the determination of whether a physician deviated from generally accepted standards of medical practice, an issue customarily submitted for resolution to a jury. In my view, the trial of plaintiff's malpractice claim belongs in the Law Division.

## III

For the reasons stated, I would reverse the judgment of the Appellate Division and remand the matter for trial in the Law Division. Justice Long joins in the dissent.

*For affirmance and remandment*—Chief Justice PORITZ and Justices O'HERN, COLEMAN, VERNIERO and LeVECCHIA— 5.

*For reversal and remandment*—Justices STEIN and LONG— 2.